COURT
OF APPEALS

                                                    EIGHTH
DISTRICT OF TEXAS

                                                               EL
PASO, TEXAS

 

                                                                              )     

ENRIQUE BOLANOS,                                        )                      No. 
08-01-00192-CR

                                                                              )

Appellant,                          )                             Appeal from

                                                                              )     

v.                                                                           )                 County Court at Law No. 1

                                                                              )

THE STATE
OF TEXAS,                                     )                   of El Paso County, Texas

                                                                              )

Appellee.                           )                         (TC# 990C01927)

 

O
P I N I O N

 

Enrique
Bolanos appeals his conviction for the offense of
driving while intoxicated.  A jury found
Appellant guilty and the court assessed his punishment at confinement for a
term of 180 days, probated for two years. 
Finding no error, we affirm.

FACTUAL SUMMARY








During
the early morning hours of February 21, 1999, two El Paso police officers, Gene
Gilmore and Adrian Armendariz, were on routine
patrol.  The officers were stopped at a
red light when a blue Honda driven by Appellant pulled up next to the patrol
car.  When the light turned green,
Appellant accelerated rapidly, causing the tires to squeal.  Without signaling, Appellant quickly changed
lanes and moved in front of the patrol unit at such a close distance that
Gilmore had to slam on his brakes to avoid a collision.  Having observed these traffic violations,
Gilmore activated the overhead lights and siren to effect
a traffic stop.  Appellant did not
immediately stop but drove approximately two and a half blocks, and in the
process of pulling over, crossed three lanes of traffic in a continuous
movement and without signaling.  It did
not appear to the officers that he checked for oncoming traffic before moving
across the lanes.

Gilmore
approached on the driver=s
side while Armendariz walked up to the right side of
the Honda.  As he asked Appellant to
produce his driver=s license
and proof of insurance, Gilmore could smell a strong odor of alcoholic beverage
in the vehicle.  Appellant had difficulty
finding his driver=s license
and passed over it twice in his wallet. 
Based upon their observations, Gilmore and Armendariz
decided to call a DWI unit to investigate. 


Officer
Ludovico Granillo, who was
assigned to the DWI task force, arrived at the scene in approximately three
minutes.  Granillo
approached Appellant who was still seated in his car and spoke with him briefly.  Granillo smelled
the odor of alcohol and also noticed that Appellant=s
speech was slurred.  Consequently, he
asked Appellant to step out of the car. 
Appellant moved slowly as he got out of the car and walked to the
back.  He also exhibited poor balance,
leaning on the vehicle as he walked.  Granillo shined his flashlight on Appellant=s face in order to perform the
horizontal gaze nystagmus test and he observed
Appellant=s eyes to
be bloodshot and glassy.  Appellant did
not complete the test because he would not follow the pen with his eyes.  Appellant also refused to perform the one-leg
raise stating that he could not do it but he did not explain why.  Based upon all of his observations, Granillo concluded that Appellant had lost the normal use
of his mental and physical faculties and placed him under arrest for driving
while intoxicated.  








Saul
Medrano, the certified intoxilyzer operator, talked
with Appellant for approximately fifteen minutes.  Appellant refused to take the intoxilyzer test. 
Medrano observed that Appellant=s
speech was slow and slurred, he had a strong odor of alcohol on his person, and
his eyes were both bloodshot and glassy. 
Based upon all of these factors, Medrano formed the opinion that
Appellant was intoxicated.  

MISSING MEMBERS OF THE VENIRE

In Point of Error No. One, Appellant asserts that the trial
court erred by allowing the dismissal of members of the venire.  The State responds that Appellant failed to
preserve error by moving to quash the jury panel and seeking attachment of the
missing jurors.  We agree with the State.

Prior
to the beginning of voir dire, the parties and trial
judge discovered that four members of the venire were missing.  Appellant made the following objection:

We do have a right
to ask for the entire venire, Your Honor. 
We do not know what panel would be impaneled but for our asking questions
of the persons that are not present, Judge.

 

The trial court
determined that one of the missing veniremembers had
been told by a deputy clerk that she did not have to appear as she had surgery
scheduled for the same day as trial.  It
is not entirely clear from the record why the other persons did not
appear.  After a brief recess to research
the applicable law, the trial court noted Appellant=s
objection but determined that they would proceed to trial.  

It
is well established that in order to preserve a complaint that the trial court
improperly excused members of the venire panel, a defendant must not only move
to quash the venire panel but also seek an attachment of the absent jurors
pursuant to Tex.Code Crim.Proc.Ann.
art. 35.01 (Vernon 1989).  Montoya v. State, 810 S.W.2d 160,
175-76 (Tex.Crim.App. 1989); Ward v. State,
505 S.W.2d 832, 836 (Tex.Crim.App.), cert. denied,
419 U.S. 864, 95 S.Ct. 117, 42 L.Ed.2d 100
(1974).  Appellant did neither.  Accordingly, Point of Error
No. One is overruled.








MISSTATEMENTS OF LAW AND BOLSTERING

In Point of Error No. Two, Appellant=s
complains of the admission of Officer Medrano=s
testimony.  First, he contends that the
trial court abused its discretion in refusing to grant a mistrial after Medrano
made misstatements of law regarding the legal effect of a breath test refusal.  Second, he argues that the trial court abused
its discretion in permitting Medrano to offer bolstering testimony.

During
direct examination, Medrano testified regarding his observations of Appellant
as well as Appellant=s
refusal to take the breath test.  Granillo, rather than Medrano, actually administered the
statutory warning, which is contained on the form known as the DIC-24, but
Medrano directly asked Appellant whether he would submit to the breath test and
Appellant refused.  Appellant=s attorney cross-examined Medrano
regarding indicators of intoxication he had mentioned in his testimony but had
failed to include in his written report. 
Additionally, he challenged Medrano=s
conclusion that Appellant had lost the normal use of his mental faculties by
pointing out that Appellant had been sufficiently alert to understand the
consequences of the breath test refusal; otherwise, the jury would have to
conclude that Medrano took unfair advantage of Appellant.  

During
re-direct examination, the prosecutor attempted to address the defense=s efforts to undermine Medrano=s testimony.  The prosecutor first questioned Medrano
regarding his efforts to be thorough in his written reports, the time frame in
which he fills out his reports, and the manner in which other duties pull him
away from that task.  It was during this
exchange that Medrano volunteered that he believed he knew Appellant from high
school so he felt it was important to recall every detail about the case to
avoid any appearance of bias in favor of Appellant.  Appellant did not object to any aspect of
this testimony.








The
following exchange then occurred between the prosecutor and Medrano:

[The
prosecutor]:  Now, what are the
consequences when a person refuses to take the intoxilyzer
test?

 

[Medrano]:  The law has changed.  Back in 1999, a person -- a person=s driver=s
license was suspended for a period of 60 days, sir, and they were fined a
hundred dollars.  Now, 45 days after the
effective date of the refusal to take the breath test, a person=s license may be suspended up to 180
days, sir.  And, of
course there=s also
the -- that=s the
civil side to it.  There=s also the criminal side to it,
sir.  

 

[The
prosecutor]:  And what do you mean by
that?

 

[Medrano]:  That=s
to say the offense could be -- the punishment that is -- the person can be punished
up to 180 days in jail and fined up to a $4,000.00 fine as per -- the rates are
in the penal code.

 

[The
prosecutor]:  Okay.  Now, you=re talking about the DWI?

 

[Medrano]:  Right, yes, sir.

 

[The
prosecutor]:  On the one side?

 

[Medrano]:  Yes, sir.

 

[The
prosecutor]:  And on the other side is --
what -- a 90-day suspension?

 

[Medrano]:  90-day suspension, correct, sir.

 

[The
prosecutor]:  Okay.  And is that -- does that 90-day suspension
always happen when they refuse the test?

 

[Medrano]:  That depends upon the state.

 

[Appellant=s counsel]:  Your Honor, yes.  I would object, Your Honor.  I don=t
believe that this officer would know what DPS or the State of Texas would do on
those matters.  Those are administrative
matters, unless this officer could be qualified that he=s
been an administrative officer or an officer for the Department of Public
Safety.  Your
Honor, that has not been established.  We=d object to any testimony regarding
that issue and those issues that are before this jury.  

 








The
trial court then called the attorneys up to the bench for a conference.  In response to the court=s observation that Medrano=s testimony concerned Aquestions of law,@ the prosecutor stated that he was
attempting to establish Medrano=s
knowledge of the DIC-24 because it would show that Appellant knew the
consequences of refusing the breath test. 
The prosecutor further pointed out that refusal of the breath test is
evidence of guilt.  The trial court
sustained Appellant=s
objection but he failed to request any additional relief at that point.

When
questioning resumed, the prosecutor asked Medrano to explain the police
department=s policy
regarding explaining the consequences of failing to take the intoxilyzer.  Medrano
began to explain the protocol when a person is arrested for driving while
intoxicated but he was interrupted by another objection from Appellant.  The trial court excused the jury to discuss
the matter.  After a lengthy and confused
exchange, the trial court ruled that the evidence showing Appellant refused to
take the breath test was admissible. 
Appellant=s counsel
then objected:

We certainly would
object that the misstatements made by Officer Medrano instructed [sic] be
stricken, that this jury be instructed to disregard that testimony regarding,
especially, the hundred dollar fine, Your Honor.  His statements about that my client could be
punished for 180 days and a $1,000.00 fine -- that=s
also a misstatement of the law.  That=s not a Class B range
of punishment, Your Honor.  The testimony
here that has tainted this jury has prejudiced this jury to the point that a
mere instruction will not be able to rehabilitate this jury.  The jury has already heard testimony that a
fine has been imposed upon our client as a result of this charge of DWI.  A fine has been established in the eyes of
the jury as to his guilt in this case. 
The jury already heard testimony of the range of punishment that our
client could receive, that being an incorrect range of punishment that he can
receive without the opportunity for our client to establish guilt or innocence
in this case, Your Honor.  All these
factors put together have tainted and prejudiced this jury to the detriment of
our client to be able to be afforded a fair and impartial verdict to the point
that mere instruction to strike is not enough, to the point than an instruction
would not even be enough to remove that taint that this jury has received, Your
Honor.  

 








The trial court
denied Appellant=s motion
for mistrial.  However, it instructed the
jury that Medrano=s
statements regarding the penalties for failing to submit to the breathalyzer --
in particular, a fine -- were incorrect and should not be considered by the
jury for any purpose.  

Standard of Review

The
trial court has broad discretion in determining the admissibility of evidence,
and its ruling will not be reversed on appeal absent a clear abuse of
discretion.  Allridge
v. State, 850 S.W.2d 471, 492 (Tex.Crim.App.
1991), cert. denied, 510 U.S. 831, 114 S.Ct.
101, 126 L.Ed.2d 68 (1993); Levario v.
State, 964 S.W.2d 290, 296 (Tex.App.‑-El
Paso 1997, no pet.).  Similarly, we
review a trial court=s
denial of a mistrial under an abuse of discretion standard.  Wood v. State, 18 S.W.3d 642, 648 (Tex.Crim.App. 2000); Ladd v. State, 3 S.W.3d 547,
567 (Tex.Crim.App. 1999), cert. denied, 529
U.S. 1070, 120 S.Ct. 1680, 146 L.Ed.2d 487
(2000).  Mistrial is an extreme remedy
for prejudicial events occurring during the trial process.  See Bauder v.
State, 921 S.W.2d 696, 698 (Tex.Crim.App.
1996).  It is a device used to halt trial
proceedings when error is so prejudicial that expenditure of further time and
expense would be wasteful and futile.  Ladd,
3 S.W.3d at 567. 
Thus, a trial court may properly exercise its discretion to declare a
mistrial if an impartial verdict cannot be reached, or if a verdict of
conviction could be reached but would have to be reversed on appeal due to an
obvious procedural error.  Id.  The determination of whether a given
error necessitates a mistrial must be made by examining the particular facts of
the case.  Id.  The asking of an improper question will
seldom call for a mistrial, because, in most cases, any harm can be cured by an
instruction to disregard.  Id.  A mistrial is required only when the
improper question is clearly prejudicial to the defendant and is of such
character as to suggest the impossibility of withdrawing the impression
produced on the minds of the jurors.  Id.

Bolstering








Appellant
argues that the trial court erred in allowing Medrano to testify that he had
known Appellant since high school because this had the effect of bolstering his
testimony.  Our review of the record
reveals that Appellant did not object to this testimony in the trial
court.  Even if it could be said that
Appellant=s
objections encompassed this aspect of Medrano=s
testimony, he certainly did not object on this ground at trial.

As
a general rule, a defendant must raise a timely and specific objection at trial
in order to preserve error.  See Tex.R.App.P. 33.1(a).  Further, the complaint on appeal must
correspond to the objection made at trial. 
Trevino v. State, 991 S.W.2d 849, 855 (Tex.Crim.App. 1999). 
Because Appellant failed to object to this testimony at trial on the
ground raised on appeal, it is waived.  See
Montoya v. State, 43 S.W.3d 568, 573 (Tex.App.--Waco 2001, no pet.).

Medrano=s
Statements Regarding the Law

Medrano
initially misstated the consequences of refusing a breath test but he
eventually agreed with the prosecutor that a breath test refusal would result
in a license suspension of ninety days. 
This testimony corresponded with the statements found on the statutory
warning admitted into evidence by Appellant. 
The trial court clearly instructed the jury that it should not consider
Medrano=s
misstatements of the law regarding the consequences of breath test
refusal.  This case does not present a
situation where the evidence is of such a damaging or prejudicial nature as to
suggest the impossibility of withdrawing the impression produced in the minds
of the jury.  Consequently, the trial
court did not abuse its discretion in denying the motion for new trial.  Point of Error No.
Two is overruled.

EXPERT TESTIMONY








In Point of Error No. Three, Appellant contends that the
trial court erred in admitting expert testimony concerning the effects of
alcohol on a person=s
physical and mental faculties. 
During his direct examination, Medrano testified about his training to
detect and recognize indicators of intoxication.  One of the indicators he looks for is
fatigue.  With respect to fatigue,
Medrano stated:

Alcohol -- in and of
by itself, an alcoholic beverage is a depressant.  And, as such, our bodies, when they consume
alcohol or any type of alcoholic beverage, we tend to become loose.  And, as such, with that, after having
consumed whatever amount of alcohol, a person becomes fatigued.  That=s
to say they want to -- they want to either go to sleep or they become
restless.  And the body, in and by
itself, becomes fatigued.  

 

Appellant=s attorney asked to take Medrano on voir dire to test his qualifications and determine if he
had Amedical
credentials.@  Medrano readily admitted that he was not an
M.D. and had not been trained in the effects of medications on a person.  Appellant, however, did not question him
regarding his qualifications to testify about the effects of alcohol on a
person.  At the conclusion of voir dire, Appellant argued that a foundation had not been
laid for Medrano to testify as an expert witness regarding the effects of Aany kind of substance@ introduced into the body.  The trial court overruled this
objection.  Medrano went on to testify
that fatigue is one of the indicators of intoxication but it must be considered
with other factors such as bloodshot and glassy eyes, slurred speech, and the
odor of alcohol on a person=s
breath.  

Appellant
argues that Medrano=s
testimony constituted a medical opinion as to intoxication even though the
State failed to qualify Medrano as a medical expert.  The State first responds that Medrano=s testimony is admissible as lay
opinion testimony.  We agree with the
State.








Contrary
to Appellant=s
assertions, a witness need not be an expert to testify that a person he
observes is intoxicated.  Smithhart
v. State, 503 S.W.2d 283, 285 (Tex.Crim.App.
1973); Vaughn v. State, 493 S .W.2d 524, 525 (Tex.Crim.App.
1972); McNorton v. State, 170 Tex.Crim. 76, 338 S.W.2d 953, 954 (1960); see
Denham v. State, 574 S.W.2d 129, 131 (Tex.Crim.App.
1978)(noting that lay opinion is admissible on many subjects including sanity,
insanity, value, handwriting, physical condition, health and disease, estimates
of age, size, weight, quantity, time, distance, speed, identify of persons and
things, and intoxication).  It is well
settled that lay opinion testimony by a police officer is admissible to prove a defendant=s
intoxication.  See Emerson v. State,
880 S .W.2d 759, 763 (Tex.Crim.App.), cert. denied,
513 U.S. 931, 115 S.Ct. 323, 130 L.Ed.2d 284 (1994); Vaughn,
493 S .W.2d at 525; see also Tex.R.Evid.
701 (a lay witness may testify as to opinions or inferences which are
rationally based on the perception of the witness and helpful to a clear
understanding of his testimony or the determination of a fact in issue).  Appellant made no objection to Medrano=s qualifications to offer lay opinion
testimony as to intoxication.  The trial
court did not abuse its discretion in admitting the testimony.  Point of Error No.
Three is overruled.

INFORMATION AND JURY CHARGE

In Point of Error No. Four, Appellant argues that the
information and charge are erroneous because they required the jury to find him
guilty only if it found that he had lost the use of both his physical and
mental faculties.  According to
Appellant, the information and charge should have been stated in the  disjunctive.  

Waiver of Complaint about Information

Article
1.14(b) requires a defendant to object prior to trial to any defect, error, or
irregularity of form or substance in an indictment or information.  Tex.Code Crim.Proc.Ann. art. 1.14(b) (Vernon Supp. 2002). 
Appellant did file any objection to the information prior to trial.  Therefore, his complaint regarding the
information is waived.

Standard of Review -- Charge Error








When
reviewing charge error, we utilize a two‑step process.  Orona v. State, 52 S.W.3d 242, 249 (Tex.App.‑-El
Paso 2001, no pet.).  Our first
task is to determine whether error actually exists in the charge.  Almanza v. State, 686 S.W.2d 157, 171 (Tex.Crim.App.
1984); Orona, 52 S.W.3d at 249.  In determining whether charge error exists,
we must view the charge as a whole and our review should not be limited to a
series of isolated statements or parts of the charge standing alone.  Orona, 52
S.W.3d at 249; see Holley v. State, 766 S.W.2d 254, 256 (Tex.Crim.App. 1989). 
Second, we must determine whether sufficient harm resulted from the
error to require reversal.  Almanza, 686 S.W.2d at 171;
Orona, 52 S.W.3d at 249.  Which harmless error standard applies depends
upon whether the defendant objected.  Abdnor v. State, 871 S.W.2d
726, 731‑32 (Tex.Crim.App. 1994); Orona, 52 S.W.3d at 249.  In a case where the defendant failed to
object, he must show that he suffered actual egregious harm.  Almanza, 686 S.W.2d at 171; Orona,
52 S.W.3d at 249.

Charging in the Disjunctive

Section
49.01(2)(A) of the Penal Code defines intoxication in
the disjunctive.  

(2)  Intoxicated means:

 

(A)  not having the
normal use of mental or physical faculties by reason of the introduction
of alcohol, a controlled substance, a drug, a dangerous drug, a combination of
two or more of those substances, or any other substance into the body.  [Emphasis added.]

 








Tex.Pen.Code Ann. '
49.01(2)(A)(Vernon Supp. 2002).  The information alleged that Appellant had
lost the normal use of his mental and physical faculties  due to the introduction of alcohol
into his body.  The instruction portion
of the court=s charge
stated these two different methods of committing the offense in the
disjunctive, but the application paragraph stated them in the conjunctive.  Appellant did not object to the jury charge
when presented with an opportunity to do so.[1]

It
is proper for a charging instrument to allege different ways of committing a
single offense in the conjunctive, but to have the court=s
charge to the jury state the different ways of commission in the
disjunctive.  Kitchens
v. State, 823 S.W.2d 256, 258 (Tex.Crim.App.
1991).  For whatever reason, the
court=s charge
did not follow this rule.  The State
argues that while it may not be to its advantage for the  application paragraph to charge the
jury in the conjunctive, it is not necessarily erroneous.  Even if we found the application paragraph to
be erroneous, it worked no harm against Appellant and probably benefitted him since the jury, which is presumed to have
followed the court=s
instructions, likely believed it had to find a loss of both mental and
physical faculties.  See Herrera v.
State, 11 S.W.3d 412, 417-18 (Tex.App.‑-Houston
[1st Dist.] 2000, pet. ref=d)(concurring opinions, J. Cohen and J. Taft).  Point of Error No.
Four is overruled.

REFUSAL OF BREATH TEST AS EVIDENCE OF GUILT

In
his final point of error, Appellant asserts that admission of the evidence
showing that he refused to take the breath test shifted the burden to him to
testify and explain the reason for his refusal in violation of his rights under
the Fifth Amendment.  The State correctly
notes that Appellant did not raise this objection to the admission of the
evidence at trial.  The trial court brought
up the issue on its own motion during the discussions about the admissibility
of Medrano=s
testimony.  At that point, the State
presented the court with authority for admission of the breath test refusal
evidence.  However, Granillo
also testified without objection that Appellant refused the breath test and
Appellant offered the statutory warning form into evidence.








A
party must continue to object every time inadmissible evidence is offered.  Ethington
v. State, 819 S.W.2d 854, 858 (Tex.Crim.App.
1991); Gillum v. State, 888 S.W.2d 281,
285 (Tex.App.‑-El Paso 1994, pet. ref=d); see Tex.R.App.P. 33.1.  Error in the admission of evidence is
waived when the same evidence is admitted elsewhere without objection.  See Ethington,
819 S.W.2d at 858; Gillum,
888 S.W.2d at 285.  By failing to object
each time the State offered the objectionable evidence, Appellant waived his
complaint.  

Even
if Appellant preserved his argument by timely objections, it is without
merit.  By statute, a defendant=s refusal to take a breath test is
admissible in evidence.  Tex.Transp. Code Ann. ' 724.061 (Vernon 1999).  The United States Supreme Court has
determined that the refusal to take a breath test is admissible and does not
violate the privilege against self‑incrimination.  South Dakota v. Neville,
459 U.S. 553, 564, 103 S.Ct. 916, 923, 74 L.Ed.2d 748
(1983).  Further, it is not
fundamentally unfair for the refusal to be considered as evidence of guilt even
where the defendant is not warned of this consequence.  Id., 459 U.S. at 565-66, 103 S.Ct. at 923-24. 
Texas courts have further held that it is proper for a trial court to
instruct the jury that breath test refusal is evidence of guilt.  See Bright v. State, 865 S.W.2d 135, 137 (Tex.App.‑‑Corpus
Christi 1993, pet. ref=d); Finley v. State, 809 S.W.2d 909, 913 (Tex.App.‑‑Houston
[14th Dist.] 1991, pet. ref=d). 
Accordingly, Point of Error No. Five is
overruled.  Having overruled each of
Appellant=s points
of error, we affirm the judgment of the trial court.

 

October 17, 2002

                                                   
                     

ANN CRAWFORD McCLURE, Justice

Before Panel No. 1

Larsen, McClure, and Chew, JJ.

 

(Do Not Publish)











[1]  In his brief,
Appellant cites to an instance during voir dire when
a dispute arose regarding whether the State was obligated to prove a loss of
both mental and physical faculties.  He
did not object, however, when presented with the jury charge during trial.