**John Odren GILLUM, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 08–93–00330–CR.

Court of Appeals of Texas,
El Paso.

Dec. 1, 1994.

Discretionary Review Refused
March 8, 1995.

Thomas S. Morgan, Midland, for appellant.

Al W. Schorre, Jr., Dist. Atty. of Midland County, Midland, for state.

Before BARAJAS, C.J., and KOEHLER and McCOLLUM, JJ.

## OPINION

McCOLLUM, Justice.

John Odren Gillum appeals from a conviction for the offense of murder. Upon a finding of guilt, the jury assessed punishment at sixty-five years' imprisonment in the Institutional Division of the Texas Department of Criminal Justice. We affirm.

### Factual Summary

Appellant was convicted of the murder of his fiance's fourteen-month-old daughter, Holly Bigler, who died on February 26, 1990. At trial, Appellant admitted that he lost his temper while changing Holly's diaper and shook her in such a manner that her head accidentally struck the floor. He did not know how many times her head struck the floor. The medical evidence revealed that Holly had suffered linear and depressed skull fractures to the back and sides of her skull due to multiple blows of her head either by or against a blunt object. Medical experts testified that the nature of the injuries were such that they normally would expect to see such damage only in a child who had fallen three or four floors, or who had been hit by a car, or who had been injured in a high speed automobile accident. Appellant attacks his conviction by six points of error.

### Discussion

In Point of Error No. One, Appellant contends that the trial court erred in admitting evidence which showed that the victim had suffered rectal tears caused by the insertion of a large object into her rectum. Focusing solely upon a portion of Dr. Robert Bux's testimony in which he stated that the tears could possibly be twenty-four hours old, Appellant argues that the evidence constitutes an extraneous offense, namely, aggravated sexual assault. He alleges that the court abused its discretion in admitting the extraneous offense because it was not proven to have been committed by him and because its prejudicial effect outweighs any probative value.

The record reflects that before the first witness was called by the State, the trial court conducted a hearing outside the presence of the jury.[1] Three witnesses testified at this hearing. Karen Hare, an identification specialist for the City of Midland Police Department, testified and identified State's Exhibit 1, a photograph she had taken in the emergency room, which depicted injuries to the deceased's rectum. Dr. Robert Bux, the medical examiner who performed the autopsy, testified that his examination of the victim revealed that she had suffered rectal

---

1. This hearing is contained in a separate volume of the statement of facts which the court reporter entitled "Motion to Suppress". We are unable to discern from the record what motion or objection caused this hearing to be held.

tears which would have resulted in bleeding. He identified State's Exhibit 1 as depicting two of the three tears he had described. He concluded that the injuries were non-accidental and occurred within twenty-four hours of the victim's death, and were caused by an object in excess of one-half to three-quarters of an inch in diameter. They were not caused by someone merely wiping or cleaning the area. In his opinion, the injuries to the victim's skull and rectum occurred in the same time frame.[2] Dr. Bux later testified before the jury that when he considered all of the evidence, he was of the opinion that the rectal tears most likely occurred in the same assault as the head injuries, or within hours of the fatal injuries.

Pam Bigler, Holly's mother, testified in this same hearing that on February 26, 1990, the date of Holly's death, she changed Holly's diaper sometime between 4:30 and 5 p.m., which was approximately fifteen to twenty minutes before she left for work. Ms. Bigler, when shown a photograph depicting the vaginal and rectal areas of the child as red and discolored, said that those areas were not in that condition when she changed the diaper that afternoon. Although Holly had been suffering from diarrhea and a rash for a few days prior to her death, neither of these conditions were present on February 26. Ms. Bigler said that she had rubbed ointment onto the genital and anal areas for the rash, but she had not inserted any object into Holly's rectum.

Following Ms. Bigler's testimony, the State argued that Dr. Bux's testimony with regard to the rectal tears was admissible because the injuries occurred contemporaneously with the head injuries. Appellant then objected to Dr. Bux's testimony concerning the rectal tears on the ground that it depicted an extraneous offense of sexual abuse not shown to have been committed by him. Following further argument by both parties, the trial court found that the testimony and evidence heard outside the presence of the jury was *"res gestae"* of the offense and relevant

to show Appellant's "culpable mental state" at the time of the charged offense, and overruled Appellant's objection. The court then made the following statement to Appellant's counsel:

[The Court]: Mr. Alvarado, you may have a running objection by—I do not foreclose your opportunity to object each time, but I understand you are objecting to the testimony's admissibility.

Appellant then re-stated his objections to include a complaint that the evidence was not "probative of anything that [Appellant] did" and that there was no proof that Appellant committed the extraneous offense. The trial court again overruled the objections. No further mention was made of a running objection.

Dr. Bux then testified at length before the jury, including the matters testified to outside the presence of the jury. Following Dr. Bux's testimony, two other doctors testified before the jury, namely, Dr. William L. McGavran, III, a neurological surgeon, and Dr. Sudhi Agrawal, who was Holly's pediatrician. Of the two, only Dr. Agrawal testified concerning the rectal tears. Dr. Agrawal treated Holly in the emergency room on February 26, 1990, and she testified at length with regard to their unsuccessful attempts to revive Holly and the extent of her injuries. After Appellant cross-examined Dr. Agrawal regarding her prior treatment of Holly for diarrhea, the State elicited from her, without objection, that Dr. Agrawal discovered the rectal tears upon examining Holly in the emergency room and that there was bruising around the rectum. Based upon the coloration of the bruises, it was her opinion that the bruises were "relatively new" or twenty-four to forty-eight hours old. Consistent with Dr. Bux's opinion, she found it unlikely that a child would inflict such injuries upon herself. In response to Appellant's cross-examination, Dr. Agrawal stated the tears occurred as the result of abnormal penetration.

2. Although Appellant does not challenge the admission of this evidence, Dr. Bux also testified in the hearing outside the presence of the jury that he discovered a number of bruises on Holly's back during the autopsy. He believed that the bruising of the back occurred during the same assault and in the same manner as the head injuries, that is, either being struck by an object or by being thrown against an object.

 The hearing held outside the presence of the jury only concerned Appellant's objections with regard to Dr. Bux's testimony. Although Appellant obtained an adverse ruling with regard to the admission of that testimony, he thereafter failed to object to the testimony of Dr. Agrawal. A party must continue to object every time inadmissible evidence is offered. *Ethington v. State,* 819 S.W.2d 854, 858 (Tex.Crim.App.1991); Tex. R.App.P. 52(a). Error in the admission of evidence is cured when the same evidence is admitted elsewhere without objection. *Ethington,* 819 S.W.2d at 858; *Hudson v. State,* 675 S.W.2d 507, 511 (Tex.Crim.App. 1984). To preserve error, Appellant could have: (1) requested a running objection, or (2) objected outside the presence of the jury to *all* the testimony he deemed objectionable as permitted by Tex.R.App.P. 52(b).[3] *See Ethington,* 819 S.W.2d at 858–59; *Rawlings v. State,* 874 S.W.2d 740, 742 (Tex.App.—Fort Worth 1994, no pet.); *Mack v. State,* 872 S.W.2d 36, 38 (Tex.App.—Fort Worth 1994, no pet.). We find that Appellant failed to preserve error under either of these alternatives. The trial court's allowance of a running objection covered only the testimony offered outside the presence of the jury. Even though it is doubtful that a running objection may cover the testimony of different witnesses without the necessity for renewal, Appellant did not request that the running objection cover all testimony and evidence on this same subject matter. Consequently, the running objection to the testimony heard outside the presence of the jury did not preserve error with regard to the later testimony of a different witness, Dr. Agrawal. *See Goodman v. State,* 701 S.W.2d 850, 863 (Tex.Crim.App.1985); *see also Ethington,* 819 S.W.2d at 859. Further, because Rule 52(b) applies to objections made outside the presence of the jury to "offered" evidence, Appellant failed to preserve error to Dr. Agrawal's testimony which was not offered in that hearing. *See Rawlings,* 874 S.W.2d at 743 (Rule 52(b) does not come into play until specific evidence is actually offered for admission).

 Even had Appellant properly preserved his relevancy objection and his complaint that it was not proven that he committed the extraneous offense,[4] we find that the trial court did not abuse its discretion in admitting the testimony. Viewing the evidence in the light most favorable to the court's ruling, the trial court could have concluded that the injuries occurred in the same assault as the fatal head injuries. By definition, the conduct which caused these injuries would not be extraneous or extrinsic to the charged conduct, so Tex.R.Crim.Evid. 404(b) would be inapplicable to the admission of the evidence. Another view of the evidence permits a conclusion that the rectal tears occurred within hours of the fatal assault, but while Appellant had sole access to Holly that afternoon and evening. Because this assault is closely related in time and interwoven with the fatal attack, the evidence is admissible as "same transaction contextual evidence".[5] *See Nelson v. State,* 864 S.W.2d 496, 498 (Tex. Crim.App.1993); *Camacho v. State,* 864 S.W.2d 524, 532 (Tex.Crim.App.1993). "Same transaction contextual evidence" is admissible as an exception under Rule 404(b) where such evidence is necessary to the jury's understanding of the charged offense. *Nelson,* 864 S.W.2d at 498; *Camacho,* 864 S.W.2d at 532. Such evidence imparts to the trier of fact information essential to understanding the context and circumstances of

---

3. When the Court hears objections to **offered** evidence out of the presence of the jury and rules that such evidence be admitted, such objections shall be deemed to apply to such evidence when it is admitted before the jury without the necessity of repeating those objections. [Emphasis added.] Tex.R.App.P. 52(b).

4. Appellant's "extraneous offense" objection is not sufficient to preserve his complaint that the evidence is more prejudicial than probative. *See Nelson,* 864 S.W.2d at 498–99.

5. What the trial court referred to as *res gestae* is now called background evidence. *See Rogers v. State,* 853 S.W.2d 29, 32 (Tex.Crim.App.1993); *Mayes v. State,* 816 S.W.2d 79, 84–87 (Tex.Crim. App.1991). The Court of Criminal Appeals has distinguished between two types of background evidence: (1) evidence of other offenses connected with the primary offense, referred to as "same transaction contextual evidence", and (2) general background evidence, referred to as "background contextual evidence". *Rogers,* 853 S.W.2d at 32.

events which, although legally separate offenses, are blended or interwoven. *Camacho,* 864 S.W.2d at 532. As such, it is admissible, not for the purpose of character conformity, but to illuminate the nature of the crime alleged. *Id.* To illustrate the necessity for the admission of this evidence, we note that part of the evidence used by the State to prove Appellant's guilt was the discovery by police of several abnormally soiled and stained diapers and kleenexes, which were not present in the bedroom and kitchen trashcans when Pam Bigler left for work that afternoon. Some of the stains on these items appeared to be blood. While Dr. Bux testified that the head injuries suffered by Holly could result in a loss of bowel control, the jury would have been left confused if no explanation was provided for what appeared to be bloodstains on the diapers and kleenex. Accordingly, the court did not abuse its discretion in impliedly concluding that the evidence necessary to the jury's understanding of the charged offense. Therefore, the evidence is admissible under this exception to Rule 404(b). *See Nelson,* 864 S.W.2d at 498; *Camacho,* 864 S.W.2d at 532.

■ Finally, we disagree with Appellant's contention that there was no proof that he committed the conduct which caused the rectal tears. The evidence showed that all of the injuries sustained by Holly, including the rectal tears, occurred while Holly was in Appellant's sole care. Furthermore, Dr. Bux testified that the rectal tears were non-accidental in nature. We find that this is sufficient evidence from which it could be reasonably concluded that Appellant caused those injuries. Point of Error No. One is overruled.

■ In Point of Error No. Two, Appellant complains that the trial court erred in refusing to grant his challenge for cause to venireperson Barry Schatz. The State contends that Appellant failed to preserve error. We agree. To present reversible error in the trial court's erroneous denial of a challenge for cause, the appellant must show: (1) he exhausted all of his peremptory challenges, (2) the trial court denied his request for additional peremptory challenges, and (3) a venireperson upon whom he would have

exercised a peremptory challenge was seated on the jury. *Adanandus v. State,* 866 S.W.2d 210, 220 (Tex.Crim.App.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1338, 127 L.Ed.2d 686 (1994); *Satterwhite v. State,* 858 S.W.2d 412, 415 (Tex.Crim.App.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 455, 126 L.Ed.2d 387 (1993). The record does not reflect that Appellant used all of his peremptory strikes, or that he asked for and was refused additional peremptory strikes, or that he was forced to take an objectionable juror whom he would not otherwise have accepted. Because error is not preserved, Point of Error No. Two is overruled.

■ In Point of Error No. Three, Appellant contends that the trial court erred in refusing to grant his motion for mistrial when it was discovered after the jury had been empaneled and sworn, but prior to the commencement of the State's case-in-chief, that Juror Marvin Hughes had not truthfully answered the question on his juror information sheet inquiring whether he had ever been an "accused" in a criminal case. Appellant contends that the trial court had no choice but to grant his motion for mistrial and summon a new venire. In a multifarious point of error, Appellant argues that the failure to grant his motion for mistrial violated his right to due process under the Fourteenth Amendment, Art. I, § 19 of the Texas Constitution, and Article 1.04 of the Code of Criminal Procedure, and his rights to a fair and impartial jury trial and the effective assistance of counsel under the Sixth Amendment, Art. I, § 10 of the Texas Constitution, and Article 1.05 of the Code of Criminal Procedure. We will not apply these provisions to our analysis of this point of error because Appellant did not object on any of these grounds at trial; thus, error predicated upon these specific provisions is not preserved. TEX.R.APP.P. 52(a).

Attention was drawn to Hughes when he did not appear as instructed on the morning testimony was scheduled to begin. His absence was due to the fact that he was home asleep after spending much of the previous night in jail after being arrested for a domestic dispute. The prosecutor testified that Hughes' criminal history, which she obtained

when Hughes did not appear that morning, reflected that he had a 1962 misdemeanor conviction for dangerous drugs and a 1966 conviction for simple assault. The criminal history also reflects four arrests for driving under the influence or driving while intoxicated, one of which resulted in a conviction for reckless conduct. Hughes admitted that he had been convicted of possession of Benzedrine and paid a fine. Neither the State nor Appellant asked Hughes about any of his other convictions or arrests. After Appellant refused the trial court's offer to dismiss Hughes from the jury, the court denied Appellant's motion for mistrial.

■ Juror Hughes testified that he had never been convicted of a felony or of theft, and there is no evidence to the contrary. Therefore, he was not subject to a challenge for cause under Article 35.16(a)(2). TEX. CODE CRIM.PROC.ANN. art. 35.16(a)(2) (Vernon 1989). In cases in which it is not discovered until after trial that a juror withheld material information during *voir dire*, the general rule is that when a partial, biased, or prejudiced juror is selected without fault or the lack of diligence on the part of defense counsel, who has acted in good faith upon the answers given to him on *voir dire* not knowing them to be inaccurate, good ground exists for a new trial. *See Von January v. State*, 576 S.W.2d 43, 45 (Tex.Crim.App.1978); *Norwood v. State*, 123 Tex.Crim. 134, 58 S.W.2d 100 (1933). This rule has been applied with equal force to cases in which it is discovered during trial that a juror has withheld material information during the *voir dire* process because in such a case, the parties are denied the opportunity to exercise their challenges, thus hampering their selection of a disinterested and impartial jury. *See Salazar v. State*, 562 S.W.2d 480, 482 (Tex.Crim.App. 1978). In such a case, it makes no difference if the juror states that he would decide the case based upon the evidence adduced at trial because the issue is that the defendant had been effectively denied the opportunity to strike the juror during *voir dire*. *See Salazar*, 562 S.W.2d at 482.

In this instance, however, Appellant does not claim that Hughes was biased, prejudiced, or partial and he makes no complaint with regard to Hughes' presence on the jury. In fact, after it was discovered that Hughes had not correctly answered the question, Appellant rejected the trial court's offer to dismiss him and proceed with the alternate juror in his place. Moreover, Appellant was unable to state to the trial court that, had he known of Appellant's criminal record during *voir dire*, he would have exercised a peremptory challenge against him. He argued to the trial court that had he known of Juror Hughes' difficulties with the law, it might have changed the manner in which either he or the State exercised their peremptory challenges, which, in turn, might have changed the composition of the jury. However, when the trial court gave Appellant an opportunity to remove Hughes from the jury and proceed with the alternate juror in his place, Appellant refused and affirmatively stated that he wished for Hughes to remain on the jury. Consequently, this is not a case in which a biased, prejudiced, or partial juror has been selected to serve on the jury, so that *Von January, Norwood,* and *Salazar* are inapplicable. We find Appellant's contention that the juror's untruthfulness might have affected the ultimate composition of the jury too speculative to constitute error. Point of Error No. Three is overruled.

■ In Point of Error No. Four, Appellant contends that the trial court erred in submitting a general verdict form to the jury. In Point of Error No. Five, he argues that the court's response to a jury note regarding Paragraph VI of the jury charge was erroneous because the court told the jury that it could convict Appellant with less than a unanimous verdict. Because Appellant's contentions are related, we will address them together.

The indictment alleged murder under Section 19.02(b)(1) in paragraph one and under Section 19.02(b)(2) in paragraph two. In the application paragraph of the charge, the trial court submitted the two theories to the jury as alternative ways of committing the offense.[6] During deliberation, the jury sent

---

6. Paragraph VI of the charge contains two para- graphs separated by the word "or". The first

out a note which read as follows: "We need the definition of 'or' as well as 'and'. Specifically—para VI—is agreeing to the second part distinctly different than the first part of VI." The trial court answered the jury's question by stating the following in writing: "The term "or" and "and" used in the charge are given the commonly understood meaning rather than any special legal meaning. The first and second paragraphs under Section VI of the instructions specify different theories by which the offense of murder can be established under the indictment and evidence in this case." The jury found Appellant guilty of murder as charged in the indictment.

Paragraphs one and two of the indictment properly alleged two different ways of committing the offense of murder under Tex.Penal Code Ann. § 19.02 (Vernon 1994). *See* Tex.Code Crim.Proc.Ann. art. 21.24(b) (Vernon 1989); *see also Rooney v. State,* 815 S.W.2d 903, 905 (Tex.App.—Fort Worth 1991, no pet.) (indictment which alleged murder of same victim under Section 19.02(b)(1) and Section 19.02(b)(2) merely alleged different ways of committing the same offense). In such a case, it is proper to provide the jury with a general verdict form. *Aguirre v. State,* 732 S.W.2d 320, 325–26 (Tex.Crim.App. 1987) (op. on reh'g); *Rooney,* 815 S.W.2d at 905. It is not required that the jury designate under which theory it found the defendant guilty. *Rooney,* 815 S.W.2d at 905. Thus, there is no error in the verdict form. With regard to the court's response to the jury note, we cannot agree that the trial court's answer may be construed as telling the jury that it could convict Appellant with less than a unanimous verdict. The jury was instructed that its verdict must be unanimous, and nothing in the court's response contradicts that instruction. Points of Error Nos. Four and Five are overruled.

▪ In Point of Error No. Six, Appellant argues that the evidence is insufficient to support the jury's finding that Appellant's hands were used as a deadly weapon. At the guilt-innocence stage of trial, the court pro-

vided the jury with appropriate definitions and instructed the jury as follows:

You are instructed that "deadly weapon" means anything that in the manner of its use or intended use is capable of causing serious bodily injury or death.

. . . . .

Now bearing in mind the foregoing instructions, if you believe beyond a reasonable doubt that the defendant, JOHN ODREN GILLUM, used or exhibited a deadly weapon, to wit: his hands to strike or throw or hurl or push Holly Bigler against a floor, or a wall or a table or an object to the Grand Jury unknown during the commission of the offense MURDER or INVOLUNTARY MANSLAUGHTER, you will so state in your verdict, but if you do not believe or if you have a reasonable doubt thereof, you will so state that finding in your verdict.

The jury found that Appellant used a deadly weapon; namely, his hands, during the commission of this offense, and the judgment contains a deadly weapon finding.

▪ The Penal Code provides that a deadly weapon is defined as anything that in the manner of its use or intended use is capable of causing death or serious bodily injury. Tex.Penal Code Ann. § 1.07(a)(17)(B) (Vernon 1994). A fist or hand is not a deadly weapon *per se,* but it can become a deadly weapon if in the manner of use, the hand or fist is capable of causing death or serious bodily injury. *See Turner v. State,* 664 S.W.2d 86, 88–89 (Tex.Crim.App. 1983); *Morales v. State,* 792 S.W.2d 789, 790 (Tex.App.—Houston [1st Dist.] 1990, no pet.); *Cooper v. State,* 773 S.W.2d 749, 750 (Tex. App.—Corpus Christi 1989, no pet.). Consequently, the State was required to show beyond a reasonable doubt that Appellant's hands, in the manner of their use, were capable of causing death or serious bodily injury. *See Morales v. State,* 792 S.W.2d at 790.

Appellant testified that he used his hands to shake Holly causing her head to strike the

paragraph of Paragraph VI contains the Section 19.02(b)(1) charge while the second paragraph contains the Section 19.02(b)(2) allegation.

floor. Dr. Robert Bux, the medical examiner who performed the autopsy, testified at trial that the victim died as the result of severe brain injuries that occurred when she was struck by a blunt object or hurled against a blunt object. He found that Holly had bruises under her chin and on her neck which were consistent with having been caused by a hand. He concluded that a minimum of three blows had been inflicted to cause the damage to the child's skull. Dr. Bux concluded that the most likely cause of Holly's injuries was being struck by a hand, kicked, held and struck against the floor, or thrown against an object. Dr. Sparks Veasey, the medical examiner for Ector County, reviewed the autopsy reports and photographs, and testified that the injuries to Holly's skull could have occurred in the manner described by Appellant if the force behind the shaking was severe. We find that a rational trier of fact could find that Appellant used his hands as a deadly weapon in the commission of this offense. *See Morales,* 792 S.W.2d at 790–91 (evidence sufficient to support finding that hands were deadly weapon where evidence showed that defendant used his hands and decedent's underpants to suffocate victim); *Shockley v. State,* 747 S.W.2d 470, 475 (Tex. App.—Houston [1st Dist.] 1988, no pet.) (evidence, including expert testimony that victim died as result of asphyxia due to ligature strangulation and trauma to neck and that either piece of fabric or hands were used to cause victim's death, was sufficient to support deadly weapon finding). Point of Error No. Six is overruled.

Having overruled Points of Error Nos. One, Two, Three, Four, Five, and Six, the judgment of the trial court is affirmed.