Becker v. State






COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

)
FORREST CRAIG COOK,                              )                  No. 08-04-00213-CR
)
                                    Appellant,                        )                             Appeal from
)
v.                                                                          )                  228th District Court
)
THE STATE OF TEXAS,                                   )                  of Harris County, Texas
)
                                    Appellee.                          )                  (TC# 964438)

O P I N I O N

            Forrest Craig Cook appeals his conviction of possession of cocaine with intent to deliver,
enhanced by two prior felony convictions. After finding Appellant guilty, a jury found the
enhancement paragraphs true and assessed his punishment at imprisonment for a term of fifty years. 
We affirm.
FACTUAL SUMMARY
            Terrence Brown, an undercover DEA agent, received information in April of 2003 that he
could purchase two kilograms of crack cocaine from Jarvis Vaughn and his associates for
approximately $17,000 per kilogram. Brown spoke with Vaughn and two associates, Lyn Davis and
Tracy Scott, during the negotiations which took place over several days. Brown eventually agreed
to purchase one kilogram of powder cocaine and one kilogram of crack cocaine. But he refused to
complete the transaction because the suspects attempted to change the plan by demanding that he
show the money first, rather than showing him the drugs first. Brown explained that in order to
ensure his safety, the transaction had to go according to the plan. Several days later, Scott called
Brown and apologized that the deal had fallen through and he suggested cutting out Vaughn, whom
he blamed for the problems. Brown agreed and they decided to meet face-to-face at Champp’s
Restaurant prior to consummating the deal. After talking with one another in the restaurant’s parking
lot for about thirty minutes, Scott called his associate to ensure that the cocaine was ready. Brown
and Scott then agreed to complete the deal at a Houston mall. Brown’s protection team followed
him to a predetermined location while other members of the surveillance team followed Scott. 
Terrence Bryant, William Furay, and other DEA agents followed Scott to some apartments where
he picked up Lyn Davis before going to a residence on Donovan Street. A blue Monte Carlo was
parked in the driveway. Scott parked his Sequoia in the street and he and Davis entered the residence
through the open garage. Scott walked outside on several occasions while talking on a cell phone. 
Appellant’s brother, Charles Herron, left in the Monte Carlo, and when he returned a short time later,
he backed the car into the driveway close to the garage. Herron, Scott, and Appellant stood near the
open trunk of the Monte Carlo while looking inside of it. The agents could not see what the three
men were doing in the trunk. After a few minutes, Scott, Davis, and Appellant, who was carrying
a black Hefty bag, got in Scott’s Sequoia and drove away. 
            Scott drove to a nearby gas station where he met with Brown. Scott exited his vehicle and
told Brown that he had the cocaine. When Brown asked to see the cocaine, Scott returned to his
Sequoia. Brown saw Appellant, who was still seated in the vehicle, bend down, pick up the black
Hefty bag and hand it to Scott. Scott opened the bag and showed Brown that the bag contained two
kilograms of cocaine. On seeing the cocaine, Brown gave the pre-arranged “bust” signal. 
            The accomplice witness, Lyn Davis, testified that Scott came to his apartment and asked him
to contact Appellant for the purpose of obtaining five kilograms of cocaine. Appellant could only
locate two kilograms. Following this conversation, Scott left the apartment and went to meet
someone at Champp’s Restaurant. When Scott returned from the restaurant, Davis called Appellant,
who instructed him to bring Scott to his mother’s home on Donovan Street. Scott and Davis drove
to the residence and parked curbside. After Scott and Appellant agreed on a price for the cocaine,
Appellant told his brother, Herron, to pick up “two things” for him. Herron left in the Monte Carlo
and returned about thirty minutes later with the cocaine in the trunk. Appellant retrieved the cocaine,
which was in a black trash bag in the trunk, and placed it in the garage. Brown called Appellant and
they agreed to complete the transaction at a gas station. Appellant carried the cocaine, still in the
trash bag, to Scott’s vehicle and they drove to the gas station where they met with Brown. When
Scott asked Appellant to hand him the cocaine, he was reluctant to touch it, so Scott reached back,
retrieved the bag, and showed the contents to Brown. After viewing the cocaine, Brown walked
away to retrieve the money. The police arrived and arrested all three of them. 
SUFFICIENCY OF THE EVIDENCE
            In Points of Error One and Two, Appellant contends that the evidence is legally and factually
insufficient because the accomplice witness testimony is not corroborated. Although Appellant
states his argument in terms of legal and factual sufficiency, the accomplice witness rule is a
statutorily imposed sufficiency review and is not derived from federal or state constitutional
principles that define the legal and factual sufficiency standards. Cathey v. State, 992 S.W.2d 460,
462-63 (Tex.Crim.App. 1999). Therefore, we measure the evidence by the requirements of Article
38.14, which provides:
A conviction cannot be had upon the testimony of an accomplice unless corroborated
by other evidence tending to connect the defendant with the offense committed; and
the corroboration is not sufficient if it merely shows the commission of the offense.

Tex.Code Crim.Proc.Ann. art. 38.14 (Vernon 2005).
            It is undisputed that Davis was an accomplice as a matter of law. In reviewing the sufficiency
of the corroborating evidence, we must eliminate the accomplice testimony from consideration and
then examine the remaining evidence to determine whether there is other evidence that tends to
connect the accused with the commission of the crime. Solomon v. State, 49 S.W.3d 356, 361
(Tex.Crim.App. 2001). It is not necessary that the corroborating evidence directly connect the
defendant to the crime or that it be sufficient by itself to establish the defendant’s guilt; it need only
tend to connect the defendant to the offense. See Cathey, 992 S.W.2d at 462. Mere presence of a
defendant at the scene of the crime is insufficient to corroborate accomplice witness testimony. Cox
v. State, 830 S.W.2d 609, 611 (Tex.Crim.App. 1992). All facts and circumstances in evidence may
be looked at to determine whether an accomplice’s testimony is corroborated. Munoz v. State, 853
S.W.2d 558, 560 (Tex.Crim.App. 1993). If the combined weight of the non-accomplice evidence
tends to connect the defendant to the offense, the requirement of Article 38.14 has been fulfilled.
Gosch v. State, 829 S.W.2d 775, 777 (Tex.Crim.App. 1991).
            The non-accomplice testimony is sufficient to connect Appellant to the offense. Special
Agent Furay saw Appellant carry the black trash bag from the residence to Scott’s vehicle. The three
of them drove to the gas station and Scott showed Brown the cocaine, which was still in the black
trash bag. This evidence is sufficient to corroborate the accomplice testimony because it tends to
connect Appellant to the offense in that it shows he was not merely present at the scene, but rather
was an active participant in the offense by exercising control of the cocaine. Points of Error One and
Two are overruled.
STREET VALUE OF COCAINE
            In his third point of error, Appellant complains that the court erred by overruling his
objections to evidence of the cocaine’s street value because it was irrelevant and substantially more
prejudicial than probative. The State responds that Appellant failed to preserve his complaint by
timely objections. During his examination of Special Agent Brown, the prosecutor asked numerous
questions about the amount of cocaine possessed by Appellant and its value:
[Prosecutor]: Okay. Is that an amount that typically one person would have for
personal use?
 
[Brown]: No, sir.
 
[Prosecutor]: Would it be an amount that would be -- an amount that would [sic]
deliverable to other people, the type that someone would sell to other individuals?
 
[Brown] You would have to be pretty -- I don’t want to say higher scale as far as
street level is concerned. I would say that is high scale for street-level drug dealers
to be able to produce two kilograms -- two kilos of raw cocaine.
 
[Appellant’s counsel]: Your Honor, I would object. That’s nonresponsive.
 
[Court]: That’s overruled.
 
[Prosecutor]: So, are you saying that is above the street-level distribution?
 
[Brown]: Yes, sir.
 
[Prosecutor]: Okay. What level do you call that?
 
[Brown]: Well, it’s not as high as what we consider major organization. But it
would -- it’s still -- that’s not typical for what’s commonly known as street-level
drugs. It’s somewhere in between. It’s a -- pretty much a go between the individuals
that run major organizations and the individuals who supply street level.
 
[Prosecutor]: Is it what we would typically call a distributable amount?
 
[Brown]: That’s not -- it’s more than typical distributable amount.
 
[Prosecutor]: So, it’s larger than that.
 
[Brown]: Yes, sir.
 
[Prosecutor]: What is the actual street value of these two kilos of powder cocaine
down the chain? [Emphasis added].
 
[Brown]: Street -- the value -- actual street value is going to depend where ultimately 
it is sold. So, if we’re talking about Houston, typically I go down to the Rio Grande
Valley --
 
[Appellant’s counsel]: Your Honor, I’ll object to that as relevance.
 
[Court]: Could you rephrase the question to make it more specific.
 
[Prosecutor]: I will, Your Honor.
 
[Court]: Okay.
 
[Prosecutor]: What would the street level -- the ultimate street-level value of those
two kilos of cocaine be in Houston, Texas? [Emphasis added].
 
[Brown]: If it is sold as a powder, you’re looking at approximately 17 to $18,000. 
Depends on what I purchase it for. So, if I did purchase it for 17,000, then I would
call -- I would do what’s called taxing it and I would put my amount on it. And so,
depending on who my customer is, depends on how much extra I charge. And also
if -- depends on where that -- if I knew where that individual was ultimately going
with the cocaine, would also depends on how much I tax it.
 
[Appellant’s counsel]: I object. This is not material. We’re interested in gram
weight, not value.
 
[Court]: That’s overruled. Rephrase your question.
 
[Prosecutor]: Now, you answered about powder. What about if it’s cooked into
crack? [Emphasis added].
 
[Brown]: If it’s cooked into crack, a kilogram of cocaine could net you
conservatively twice the amount, about $34,000.
 
[Prosecutor]: Per kilo?
 
[Brown]: Per kilo here in Houston. 

Later, during re-direct, the prosecutor returned to the subject of the cocaine’s street value:
 
[Prosecutor]: And you had mentioned previously -- we were talking about the value
of two kilos.
 
[Brown]: Yes, sir.
 
[Prosecutor]: What level value were you talking about at that time?
 
[Brown]: Distributor level.
 
[Prosecutor]: Now, if those two kilos were cooked into -- like you explained to the
jury -- [Emphasis added].
 
[Appellant’s counsel]: Judge, I’m going to object to that. Any question that starts
with ‘if’ calls for speculation.
 
[Court]: That’s overruled.
 
[Prosecutor]: Based on your training and experience, two kilos cooked into crack
cocaine, what is the approximate street-level value -- the ultimate sale value? 
[Emphasis added].
 
[Brown]: Here in Houston again, conservatively, you’re looking at each kilo being
a thousand grams. A gram of crack cocaine is going for about $100. So, each kilo
of powder cocaine is going to give you conservatively at least two kilos grams of
rock cocaine or crack cocaine. So, you’re looking at a total of approximately 4,000
grams of crack cocaine at a value of conservatively $100 a gram, you’re looking at
approximately $100,000 -- I mean, $400,000.
 
[Prosecutor]: No further questions. 

            As a prerequisite to presenting a complaint for appellate review, the record must show that
the complaint was made to the trial court by a timely request, objection, or motion, and the trial court
ruled on the request, objection, or motion. Tex.R.App.P. 33.1(a)(1) and (2); Tucker v. State, 990
S.W.2d 261, 262 (Tex.Crim.App. 1999). A party must continue to object every time inadmissible
evidence is offered. Ethington v. State, 819 S.W.2d 854, 858 (Tex.Crim.App. 1991); Gillum v. State,
888 S.W.2d 281, 285 (Tex.App.--El Paso 1994, pet. ref’d); Tex.R.App.P. 33.1. Error in the
admission of evidence is cured when the same evidence is admitted elsewhere without objection.
Ethington, 819 S.W.2d at 858; Hudson v. State, 675 S.W.2d 507, 511 (Tex.Crim.App.1984). There
are two exceptions to the requirement that a party object each and every time inadmissible evidence
is offered: (1) a running objection, or (2) an objection made outside the presence of the jury to all
the testimony he deemed objectionable as permitted by Rule 103(a)(1). See Ethington, 819 S.W.2d
at 858-59 (discussing similar provision in former Rule 52(a) of Rules of Appellate Procedure);
Gillum, 888 S.W.2d at 285.
            Appellant did not object to this line of testimony outside of the jury’s presence nor did he
obtain a running objection. Therefore, he was required to object each time the prosecutor asked a
question about street value of the cocaine. Appellant did not raise a relevance objection to the
prosecutor’s first question about street value until after Brown had answered the question, and even
then, he did not obtain a ruling on his objection. Appellant did not object to subsequent questions
and testimony about street value. Consequently, his complaint is not preserved for our review. Point
of Error Three is overruled. The judgment of the trial court is affirmed. 

June 30, 2005                                                              
                                                                                    ANN CRAWFORD McCLURE, Justice

Before Barajas, C.J., McClure, and Chew, JJ.

(Do Not Publish)