# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-16-00782-CR

**Stephen Artkeith Walker, Appellant**

**v.**

**The State of Texas, Appellee**

---

**FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 277TH JUDICIAL DISTRICT
NO. 16-1295-K277, HONORABLE STACEY MATHEWS, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

A jury convicted Stephen Artkeith Walker of the third-degree felony offense of assault family violence, second offense. *See* Tex. Penal Code § 22.01(a)(1), (b)(2)(A).[1] The district court assessed Walker's punishment, enhanced by two prior felony convictions, at thirty-five years' imprisonment and rendered judgment consistent with the jury's verdict. *See id*. § 12.42(d). On appeal, Walker acknowledges that "the State presented uncontroverted evidence of his guilt as to the charged offense." But he contends that the court erred by submitting a deadly weapon issue to the jury because assault causing bodily injury is an offense that does not involve the use or exhibition of a deadly weapon. We will affirm the judgment of conviction.

---

[1] Walker stipulated at trial that he had been convicted twice before of assault family violence.

## BACKGROUND[2]

Walker and his live-in girlfriend, Stephanie Sheffield, had been in a relationship for three years and had an infant son together. The events leading to Walker's conviction began when he and Sheffield had an early morning argument at home that became physical. Sheffield testified that she and Walker exchanged insults, then Walker stated that he was "going to show [her] a punk." Walker grabbed Sheffield by the ears and hair and threw her against the bedroom wall, picked her up and "body-slam[med]" her onto the floor, threw her across the room by her hair, pushed her into the bathtub, and placed his arm against her throat as she was leaned back in a rocking chair with her head against the wall. Sheffield stated that she was yelling and screaming when this happened and that she told Walker he was hurting her, but that he told her to "shut up and stop crying." Sheffield testified that Walker, who was three or four inches taller than her, used only his hands during the altercation. She stated that she wanted Walker to stop hurting her, but she denied thinking that he was going to kill her or that she was going to die. When the doorbell rang, Walker told her to get herself together because the police were at the door. Sheffield testified that Walker answered the door and told whoever was there that "everything was okay."

After the altercation, Sheffield "wanted to put this behind us so we would still be able to take care of our son." She got ready for work, and she and Walker went to his mother's house, where their son had spent the night. Walker then dropped Sheffield off at work. During the work day, they exchanged text messages discussing their earlier altercation and their relationship. The next day, Sheffield met with police and sought treatment for pain at a hospital. Sheffield testified

---

[2] The facts are summarized from the testimony and exhibits admitted into evidence at trial.

that she felt pain for several days after the assault. Round Rock Police Detective Will Trevillion investigated Sheffield's allegations and took photographs of her injuries, including bruises and red marks on her ears, arms, and legs. Detective Trevillion testified that Sheffield could have been seriously hurt that night. He further testified, based on his training and experience as a police officer, that hands could be used as deadly weapons and that death or serious bodily injury could result from taking someone by the ears and banging their head against a wall.

At the conclusion of the trial, the court provided the jury with a charge that included a special issue on Walker's use or exhibition of a deadly weapon. During jury deliberations, the presiding juror sent a note to the court stating that they had reached a unanimous decision on the assault charge but that they were unable to reach a unanimous decision on the deadly weapon special issue, asking if it was possible for them to render a verdict on the assault charge only. When the court brought the jury back into the courtroom to address the question, the prosecutor said that the State waived the deadly weapon allegation "in the interest of justice" and asked to proceed only on the charge of assault family violence, second offense. The presiding juror informed the court that the jury had not completed the verdict form indicating its decision on the assault charge. After a brief recess, the jury returned with its completed verdict finding Walker guilty as charged in his indictment (without reaching the deadly weapon special issue that the State had withdrawn).[3] The district court assessed punishment and rendered judgment in accordance with the jury's verdict. This appeal followed.

---

[3] When the jury returned its verdict, the court stated that it was "drawing a line through" the page in the charge for a deadly weapon finding, noting that the State waived it. The record contains that diagonally lined-through page with the court's handwritten notation, signature, and date.

3

## DISCUSSION

Walker's sole appellate issue contends that the court erred by asking the jury to consider whether he used a deadly weapon to commit an offense that cannot include the use or exhibition of a deadly weapon. In three sub-parts to that issue, Walker contends specifically that the deadly weapon issue should not have been submitted to the jury because: (1) the jury could not logically find him guilty of assault causing bodily injury and find that he used or exhibited a deadly weapon in the commission of the offense; (2) the State did not present any evidence that he used his hands in a manner capable of causing death or serious bodily injury; and (3) the allegedly improper submission of the deadly weapon issue was calculated to excite the passion of the jury in violation of Article 36.14 of the Texas Code of Criminal Procedure. Walker further contends that the allegedly improper submission of the deadly weapon issue was egregiously harmful to him because it resulted in jury discussions about "deadly weapons" and "serious bodily injury" when they were deliberating whether he was guilty of assault causing bodily injury and because it resulted in defense counsel focusing his closing argument on whether Walker used or exhibited a deadly weapon in the commission of the offense.

We review a claim of jury charge error by determining first whether error exists, then evaluating the harm caused by any error. *Arteaga v. State*, 521 S.W.3d 329, 333 (Tex. Crim. App. 2017). A trial, Walker stated that he had no objection to the court's charge. When—as here—the defendant fails to preserve error by timely objection at trial, reversal is warranted only upon a showing of "egregious harm" such that the defendant was deprived of a fair and impartial trial. *Mendez v. State*, 545 S.W.3d 548, 552 (Tex. Crim. App. 2018).

4

**Jury may find defendant guilty of felony assault and make deadly weapon finding**

Walker contends that the deadly weapon issue should not have been submitted to the jury because the jury could not logically find him guilty of assault causing bodily injury and also find that he used or exhibited a deadly weapon in the commission of the offense. *Compare* Tex. Penal Code § 22.01(a)(1) (defining misdemeanor offense of bodily-injury assault as intentionally, knowingly, or recklessly causing bodily injury to another, including spouse) *with id*. § 22.02(a) (defining aggravated assault as using or exhibiting deadly weapon or causing serious bodily injury to another, including spouse, during commission of assault defined in section 22.01). However, Walker was charged with the felony of assault family violence, second offense. *See id*. § 22.01(a)(1), (b)(2)(A). The Court of Criminal Appeals has noted that "all felonies are theoretically susceptible to an affirmative finding of use or exhibition of a deadly weapon." *Prichard v. State*, 533 S.W.3d 315, 325 (Tex. Crim. App. 2017) (quoting *Patterson v. State*, 769 S.W.2d 938, 940 (Tex. Crim. App. 1989)).

A "deadly weapon" under the relevant section of the Penal Code includes "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." Tex. Penal Code § 1.07(a)(17)(B). "Serious bodily injury" is defined as "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." *Id*. § 1.07(a)(46). The deadly weapon statute is "exceedingly broad," and there is no limitation as to what type of thing may be considered a deadly weapon. *Prichard*, 533 S.W.3d at 320. A deadly weapon finding may be made even in the absence of actual harm or threat. *Id*. "[A]n object is a deadly weapon if the actor intends

a use of the object in which it would be capable of causing death or serious bodily injury." *McCain v. State*, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000) (noting that use of "capable" in definition of deadly weapon enables statute to cover conduct that threatens deadly force, even if actor has no intention of actually using deadly force).

Moreover, the Court of Criminal Appeals has recognized that a hand can be a deadly weapon in the manner of its use, depending on the evidence shown. *Lane v. State*, 151 S.W.3d 188, 191 (Tex. Crim. App. 2004) (citing *Turner v. State*, 664 S.W.2d 86, 90 (Tex. Crim. App. 1983)). Thus, contrary to Walker's contention, a jury may find a defendant guilty of felony assault family violence and make a deadly weapon finding, depending on the facts presented at trial. *See Prichard*, 533 S.W.3d at 325; *see also Brantley v. State*, No. 05-13-00225-CR, 2014 Tex. App. LEXIS 1450, at *1 (Tex. App.—Dallas Feb. 10, 2014, no pet.) (mem. op., not designated for publication) (affirming defendant's conviction of felony assault family violence with deadly weapon finding); *Silva v. State*, No. 07-05-0423-CR, 2006 Tex. App. LEXIS 5661, at *1, *7 (Tex. App.—Amarillo June 29, 2006, pet. ref'd) (mem. op., not designated for publication) (same).

**Use of hands as deadly weapon**

Walker also contends that the court erred in submitting the deadly weapon issue in the charge to the jury because the State did not present any evidence that he used his hands in a manner capable of causing death or serious bodily injury. Article 36.14 of the Texas Code of Criminal Procedure directs the trial judge to "deliver to the jury . . . a written charge distinctly setting forth the law applicable to the case." *Mendez*, 545 S.W.3d at 551–52; *Arteaga*, 521 S.W.3d at 334; *see* Tex. Code Crim. Proc. art. 36.14. The jury should be charged on issues arising from the facts.

6

*See* Tex. Code Crim. Proc. art. 36.14 (listing among possible charge errors "failing to charge upon issues arising from the facts"). When the jury is the trier of fact, the issue of whether a deadly weapon was used or exhibited during the commission of an offense must be made by the jury. *Ex parte Lara*, 693 S.W.2d 403, 404 (Tex. Crim. App. 1985) (citing *Ex parte Thomas*, 638 S.W.2d 905 (Tex. Crim. App. 1982)); *see* Tex. Code Crim. Proc. arts. 36.13, 38.04 (providing that jury is exclusive judge of facts in criminal trial, unless otherwise provided by Code of Criminal Procedure).

Walker's indictment included notice that the State intended to seek an affirmative finding of a deadly weapon, "namely, the defendant's hands or hands." In determining whether hands were used as a deadly weapon, the factfinder may consider any injuries inflicted on the victim. *See Lane*, 151 S.W.3d at 191. Other factors that may be considered in determining whether an object is a deadly weapon include: (1) the physical proximity between the victim and the object; (2) the threats or words used by the assailant; (3) the size and shape of the weapon; (4) the weapon's ability to inflict death or serious injury; and (5) the manner in which the defendant used the weapon. *Tisdale v. State*, 686 S.W.2d 110, 111 (Tex. Crim. App. 1984); *In re S.B.*, 117 S.W.3d 443, 446 (Tex. App.—Fort Worth 2003, no pet.). No one factor is determinative, and the reviewing court must examine each case on its own facts to determine whether the fact finder could have concluded from the surrounding circumstances that the object used was a deadly weapon. *See Brown v. State*, 716 S.W.2d 939, 947 (Tex. Crim. App. 1986); *In re S.B.*, 117 S.W.3d at 447.

The evidence at trial supported the court's submission of the deadly weapon issue. As to the physical-proximity factor, Walker was close enough to Sheffield to use his hands to grab her by the ears and hair and throw her against the bedroom wall, pick her up from against the wall

and body slam her onto the floor, throw her across the room by her hair, and push her into the bathtub. As to the factor concerning any injuries inflicted on the victim, the medical records and photographs in evidence show that Sheffield sustained numerous bruises and had visible red marks on her ears, arms, and legs, consistent with her testimony that Walker used his hands to grab her, throw her, and push her during the assault. Sheffield also testified that after the assault, she felt pain for several days. Walker himself acknowledges that "the evidence presented at trial demonstrated that Ms. Sheffield suffered injuries of a serious nature." Regarding the factor of the assailant's threats or words, Sheffield testified that Walker told her he "would show [her] a punk" before he started assaulting her, and that when she said that he was hurting her, he responded by telling her to "shut up and stop crying." Walker also told someone at the front door that "everything was okay," preventing possible intervention to assist Sheffield.

Regarding the size and shape of the weapon, its potential to inflict death or serious bodily injury, and the manner of its use, Detective Trevillion testified that, based on his training and experience as a police officer, hands could be used as deadly weapons and that death or serious bodily injury could result from taking someone by the ears and banging their head against a wall. He also testified that Sheffield could have been seriously hurt that night. Further, there was evidence that the manner in which Walker used his hands—to throw Sheffield against a wall, to pick her up and body slam her onto the floor, and to push her into a bathtub—was capable of causing even greater harm to Sheffield than she sustained. *See Gillum v. State*, 888 S.W.2d 281, 288–89 (Tex. App.—El Paso 1994, pet. ref'd) (concluding that evidence of defendant using his hands to cause victim to strike her head on floor and to hurl her against wall or blunt object was sufficient to support

8

deadly weapon finding); *see also In re J.A.B.*, No. 03-09-00184-CV, 2010 Tex. App. LEXIS 3625, at *4 (Tex. App.—Austin May 13, 2010, no pet.) (mem. op.) (affirming deadly weapon finding against defendant who stabbed victim's neck with pocketknife, noting that victim's wound could have been serious given its location). This evidence supports the court's determination that there was an issue—arising from the facts adduced at trial—as to whether Walker used his hands as a deadly weapon, requiring a deadly weapon special issue in the charge for the jury's consideration. *See* Tex. Code Crim. Proc. art. 36.14 (noting that charge error includes "failing to charge upon issues arising from the facts").

**Submission of deadly weapon issue was not calculated to excite passion of jury**

Walker further contends that the court's allegedly improper submission of the deadly weapon issue was calculated to excite the passion of the jury in violation of Article 36.14 of the Texas Code of Criminal Procedure. *See id.* (stating that judge shall provide jury with written charge setting forth law applicable to case without "discussing the facts or using any argument in his charge calculated to arouse the sympathy or excite the passions of the jury"). Walker states that although the charge contained proper definitions of "deadly weapon" and serious bodily injury," he was egregiously harmed because the special issue required the jury to consider a more serious and violent offense than the charged offense. In his view, the court's submission of the deadly weapon special issue suggested that Walker committed the charged offense and made the jury more likely to convict him of the charged offense.

In support of this contention, Walker relies on *Kirsch v. State*, 357 S.W.3d 645 (Tex. Crim. App. 2012), and *Brown v. State*, 122 S.W.3d 794 (Tex. Crim. App. 2003). In *Kirsch*, the trial

court provided a charge that defined "operate" for purposes of determining whether the defendant committed the offense of DWI, although the Texas Penal Code did not define that term. 357 S.W.3d at 652. The Court of Criminal Appeals held that in doing so, the trial court impinged on the jury's fact-finding authority by limiting the jurors' understanding of what evidence could constitute "operating" for purposes of the offense. *Id.* (noting that by defining "operate" as "to exert personal effort to cause the vehicle to function," trial court selected one definition of statutorily undefined, common term that jury could have selected in assessing evidence and instructed jury that they "must be governed by" that definition). *Kirsch* includes a discussion of the Court's earlier opinion in *Brown*, in which the trial court's charge instructed the jury considering a capital-murder charge that it could infer intent or knowledge from acts done or words spoken. *Id.* (citing *Brown*, 122 S.W.3d at 797). The Court held that such instruction impermissibly focused the jury on a specific type of evidence and told them that it could infer an element of the murder offense—i.e., intent to kill—from such evidence. *Id.* (citing *Brown*, 122 S.W.3d at 800–01) (noting that in homicide prosecutions, defendant's state of mind is fact question that must be determined by jury and that intent to kill cannot be presumed as matter of law). The Court stated that the inference is "a judicial review device" or "a common-sense tool for a trial judge" used to gauge evidentiary sufficiency, "not an explicit legal tool for the jury." *Id.* (quoting *Brown*, 122 S.W.3d at 802–03).

Here, the deadly weapon special issue in the court's charge contained none of the infirmities identified in *Kirsch* and *Brown.* The special issue did not define a statutorily undefined term, nor did the special issue suggest to the jury that it might infer an element of the charged

offense. Rather, the special issue given to the jury in this charge tracked the language of the Penal Code definition for a deadly weapon. *See* Tex. Penal Code § 1.07(a)(17)(B).

Based on this record, we conclude that Walker has not shown that the court erred by submitting the deadly weapon special issue in its charge to the jury; thus, we need not conduct a harm analysis. *See Arteaga*, 521 S.W.3d at 333. We overrule Walker's appellate issue.

## CONCLUSION

We affirm the district court's judgment of conviction.

_____

Jeff Rose, Chief Justice

Before Chief Justice Rose, Justices Field and Goodwin

Affirmed

Filed:   November 16, 2018

Do Not Publish