

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| MOSES JACK POPP, | § | No. 08-19-00298-CR |
| Appellant, | § | Appeal from the |
| v. | § | 210th District Court |
| THE STATE OF TEXAS, | § | of El Paso County, Texas |
| Appellee. | § | (TC#20180D02517) |
| | § | |

**O P I N I O N**

Appellant Moses Jack Popp ("Popp") appeals his conviction for capital murder for which

he received an automatic life sentence with the possibility of parole.[1] We affirm.

**BACKGROUND**

In the early morning of March 12, 2018, Popp (also known as "Moy ZanDalio" and

"Klownzter") sent a message to Ruben Villegas over Facebook Messenger indicating Popp wanted

to purchase marijuana from Villegas. Villegas provided an address where Popp could pick up the

marijuana, and after reaching an agreement on quantity and price, Villegas informed Popp he was

---

[1] Popp was seventeen years' old at the time of the offense. He is therefore eligible for parole despite his conviction for capital murder. TEX.PENAL CODE ANN. § 12.31(a)(1); *see also Miller v. Alabama*, 567 U.S. 460, 465 (2012) (holding "mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.'").

sending his "girl" to conduct the transaction. At the designated location, at approximately 12:46 a.m., Desiree Guerrero, Villegas' girlfriend, approached a gray, older model Crown Victoria with chrome rims. Guerrero saw two male occupants in the vehicle. According to Guerrero, the driver, who was later identified as Popp, had triangle "clown" tattoos on his face, while the passenger, who was later identified as Richard Soriano ("Boxer"), had the numbers "1" and "2" tattooed on his face.

Guerrero testified at trial that Popp got out of the car, pointed a long black gun with a wooden handle at her, demanded she turn over the marijuana, which she did, and drove off. Soriano, according to Guerrero, said and did nothing during the incident. Guerrero immediately reported she was robbed to Villegas who sent a Facebook Message to Popp that read, "[y]ou a bitch ass nigga bro why don't you just pay for em? Pointin a gun on a female for 4 gs broke ass nigga. Y'all on some lame nigga shit fuck nigga." Popp's Facebook Message response was, "[w]hat u gone [sic] do?"

Less than two hours later, at approximately 2:25 a.m., Ronny Harden was driving to Walgreens to pick up a late-night snack for himself and his girlfriend. On his way there, Harden saw a male standing next to the passenger side of an older model Crown Victoria, silver or black in color. But he could not identify anyone in the Crown Victoria, nor could he see how many individuals were inside. As he approached the vehicle from behind, Harden saw a "spark," which he later recognized as gunfire, but he did not hear a gunshot. He then saw the male standing next to the vehicle drop to the ground, after which the Crown Victoria immediately sped away. Harden called his girlfriend, who was at an apartment nearby, to tell her what he saw and to ask if she heard a gunshot. She had not. The time stamp on Harden's cell phone indicated he made the call

2

to his girlfriend at 2:25 a.m. Harden continued on his way to Walgreens. Upon his return, he noticed the individual was still on the ground, so for the second time, Harden called his girlfriend, who advised him to call 911, which he did.

When officers with the El Paso Police Department ("EPPD") arrived at the crime scene at approximately 2:44 a.m., they found sixteen-year-old T.V. ("the deceased") lying unresponsive face down on the ground. A single bullet had entered the front base of his neck and traveled in a downward direction through his chest cavity piercing his right lung. The bullet was lodged in his spinal canal when it was retrieved during the autopsy performed later in the day. Police found the deceased's cell phone in his pocket.

Gary Mark, an EPPD officer assigned to the Crime Scene Unit took photographs of the text messages as they appeared on the deceased's cell phone. The last texts made by the deceased prior to his death included responses to texts he received from Popp. The texts began at 1:47 a.m. and ended at approximately 2:22 a.m. The texts established that Popp had arranged to meet the deceased at the location of the shooting to purchase $100 worth of cocaine. No drugs were found in the possession of the deceased or at the crime scene. A fake $100 bill was found in the deceased's possession.

A warrant for Popp's arrest was issued on March 12, 2018, and he was taken into custody the next day. According to the complaint affidavit attached to the warrant, the decedent's girlfriend identified Popp through his Facebook profile as the "Moy" with whom the decedent had been communicating prior to his death. Officers with the EPPD Gang Unit were familiar with Popp and his known associates. One of Popp's associates owned a silver 1997 Crown Victoria. The owner of the vehicle confirmed Popp and "another subject" had borrowed the vehicle to obtain narcotics

3

on March 11, 2018. When the car was returned, there was blood on the inside of the passenger-side door panel.

Jaime Montes, a friend of Popp's, testified at trial during the State's case-in-chief that shortly after the shooting, he spoke to Popp. According to Montes, Popp said he was scared because "we fucked up." While Popp did not admit to Montes he shot T.V., Montes "put two and two together from social media" and advised Popp he should dispose of the weapon. To assist with that objective, Montes put Popp in contact with Javier Romero, from whom the police eventually retrieved a black Remington rifle with a wooden handle. There were no identifiable prints on the rifle. However, Jeff Kelly, a forensic scientist employed by the Texas Department of Public Safety, compared projectiles fired from the rifle with the projectile obtained from the deceased's body and concluded they came from the same weapon.

Finally, at some point, Guerrero saw the Crown Victoria driven by her robbers parked at a house on Joe Herrera Street, and she gave the information as to the car's whereabouts to police detectives. Two fingerprints lifted from the exterior front passenger-side door of the Crown Victoria matched the fingerprint comparisons obtained from Popp. Nine fingerprints lifted from the exterior portion of the passenger-side front window, the passenger-side front door, the passenger-side rear door, and the driver-side front door, front window, and rear window of the Crown Victoria matched the fingerprint comparisons obtained from Soriano.

## Trial

On May 24, 2018, a two-count indictment charged Popp with (1) capital murder, and (2) aggravated robbery of Guerrero. Trial commenced on November 8, 2019. At trial, the State introduced evidence of the facts set forth in our background section (except the information

4

obtained from the police gang unit about Popp's gang affiliation). After the State rested, Popp's attorney told the jury in opening statement that Soriano pulled the trigger and that he did so without Popp's knowledge or cooperation. Defense counsel also told the jury that Popp was not criminally responsible for the shooting death of the deceased, nor did he assist the person who did.

In support of the defense that Popp did not pull the trigger, Popp offered the testimony of Maria Guadalupe Perez, whose sister was dating Popp at the time of the shooting. Perez testified that in the evening of March 11, 2018, Popp, Soriano, and "Menace" were hanging out at her house, which at the time was located on Joe Herrera Street. She said she went to bed at around 11:00 p.m., and when she woke up the next day at 8:00 a.m. they were still there. She said Popp was "angry" at Soriano and that when Popp accused him of killing the "little boy," Soriano responded, "I never slept this good in my life. It's time to go and get a tear drop." Perez testified she understood this to mean that Soriano intended to get a tattoo in the image of a tear drop which symbolizes to gang members he killed someone. On cross-examination, Perez admitted she was interviewed by police on March 13, 2018, the day after the shooting, but failed to tell the police what she told the jury because at the time she spoke to police she was unwilling to get involved.

Popp's parents also testified in his defense. They each testified Popp's father gave him over $200 around the time of the shooting, which proved, according to defense counsel, Popp had no reason to commit robbery. Finally, Popp introduced testimony from the decedent's girlfriend, Princess Perez, who testified she was communicating with the decedent through video calling on Facebook and texts on the night of the shooting until his death. She testified that although she came to understand on the day of the shooting the decedent was on his way to "become involved in a drug transaction," she was unaware the decedent had ever before sold or used drugs. Popp did

5

not testify.

During closing argument, defense counsel argued that although Popp was present when the shooting occurred, Popp had only agreed to purchase cocaine and was a mere "bystander" who witnessed "a friend, shoot and kill someone." Counsel argued the State failed to prove beyond a reasonable doubt that: (1) Popp committed robbery or attempted to commit robbery; (2) shot the deceased; (3) "encouraged," "solicited," "aided," or "directed" Soriano to shoot the deceased; or (4) Popp entered into an agreement to rob the deceased. Defense counsel argued further Popp did not know a robbery would ensue or that a gun would be exhibited or used. When addressing Guerrero's testimony, counsel argued the jury should disregard it as not credible.

After referencing the defense's theory that "paint[ed]" Popp as a "scared 17-year-old," who was at the wrong place at the wrong time the prosecutor told the jury to focus its attention on the jury instruction regarding the law of parties:

> [T]his law says . . . if you agree to commit one felony and another felony is committed, you are going to be held responsible for the ultimate felony that happened. . . . I can't prove to you who pulled the trigger and because I have the burden of proof and I can't prove to you who pulled the trigger, I'm going to give the Defendant the benefit of the doubt and I'm going to say he did not because I can't prove that. . . . But I can sure prove, and you get to use your reason and common sense, based on all his actions afterwards, based on all his action before, that he knew darn well that gun was going to be produced in that robbery. . . . I, a hundred percent, can prove that he is still a party.

The jury returned a verdict of guilty of Capital Murder "as charged in the Indictment." The State subsequently dismissed Count II of the indictment.

## ISSUES PRESENTED

In seven issues, Popp contends the trial court committed error by: (1) denying his pretrial motion to dismiss the indictment; (2) overruling his objection to the jury charge instruction on law

of parties because he was denied adequate notice of the State's intent to rely on particular party culpability statutory provisions; (3) overruling his objection to the jury charge instruction on law of parties because it was not raised by the evidence; (4) denying his request for a limiting instruction on extraneous-offense evidence at the time the evidence was admitted; (5) denying his request for a limiting instruction on extraneous offense evidence in the jury charge; (6) excluding his evidence establishing that Soriano pleaded guilty to the offense and received a fifty-five year sentence; and (7) excluding evidence of text exchanges between the deceased and his girlfriend. We address each issue in turn.

## DISCUSSION

### I. Was Popp's Indictment Defective? And if So, Was He Denied Notice Adequate to Prepare His Defense?

In his first issue, Popp contends his indictment was defective because it failed to allege a specific theory of party culpability. In his second issue, Popp argues the trial court erred by charging the jury on specific theories of party culpability that were not alleged in the indictment, and that such omission allegedly prevented him from preparing a complete defense.

#### A. Standard of Review

The sufficiency of an indictment is a question of law. *State v. Zuniga*, 512 S.W.3d 902, 906 (Tex.Crim.App. 2017). Accordingly, we review *de novo* the trial court's decision to deny Popp's motion to dismiss the indictment. *Id.* The trial court's ruling should be upheld if it is correct under any theory of law applicable to the case. *Id.*

#### B. Law on Indictments

The Texas Constitution guarantees that for felony offenses "no person shall be held to answer for a criminal offense, unless on an indictment of a grand jury[.]" TEX.CONST. art. I, § 10;

7

*Riney v. State*, 28 S.W.3d 561, 564 (Tex.Crim.App. 2000). The presentment of a valid indictment vests the district court with jurisdiction over the criminal cause. TEX.CONST. art. V, § 12(b); *Studer v. State*, 799 S.W.2d 263, 268 (Tex.Crim.App. 1990). Since 1985, the Texas Constitution defines an indictment sufficient to vest a district court with jurisdiction in relevant part as "a written instrument presented to a court by a grand jury charging a person with the commission of an offense." TEX.CONST. art. V, § 12(b); *see Teal v. State,* 230 S.W.3d 172, 176 (Tex.Crim.App. 2007)(observing that in 1985, "[t]he voters amended the Texas constitution to include the definition of an indictment"*)*; *Jenkins v. State*, 592 S.W.3d 894, 896 n.3 (Tex.Crim.App. 2018). All other specific form and substance requisites of an indictment are controlled by state statute. *See* TEX.CONST. art. V, § 12(b)("The practice and procedures relating to the use of indictments and informations, including their contents, amendment, sufficiency, and requisites, are as provided by law."); *Studer*, 799 S.W.2d at 272 ("requirements of an indictment are not mandated by the constitution, but rather only by statute").

When determining whether a particular indictment satisfies the *constitutional* definition through which a district court's jurisdiction is invoked, we ask "whether the face of the charging instrument is clear enough to give an appellant adequate notice of the charge against him." *Jenkins*, 592 S.W.3d at 901 [Internal quotations and footnotes omitted]; *see also Teal*, 230 S.W.3d at 180 ("The proper test to determine if a charging instrument alleges 'an offense' is whether the allegations in it are clear enough that one can identify the offense alleged."); *id.* at 177 (Since 1985, "indictments charging a person with committing an offense, once presented, invoke the jurisdiction of the trial court and jurisdiction is no longer contingent on whether the indictment contains defects of form or substance.").

However, if the sufficiency of an indictment is challenged on the ground that it fails "to allege facts sufficient to give the defendant notice of *precisely* what he is charged with," *Adams v. State*, 707 S.W.2d 900, 901 (Tex.Crim.App.1986)[Emphasis added], the alleged defect does not implicate the trial court's jurisdiction, *Teal,* 230 S.W.3d at 182, but rather complains about a defect in *form*. *Adams*, 707 S.W.2d at 903. Defects in form are controlled by Article 21.19 of the Texas Code of Criminal Procedure which mandates that "[a]n indictment shall not be held insufficient, nor shall the trial, judgment or other proceedings thereon be affected, by reason of any defect of form which does not prejudice the substantial rights of the defendant." TEX.CODE CRIM.PROC.ANN. art. 21.19.

In addition, an indictment "shall be deemed sufficient" if, among other requisites, the offense is "set forth in plain and intelligible words." TEX.CODE CRIM.PROC.ANN. art. 21.02(7). And while "[e]verything should be stated in an indictment which is necessary to be proved," TEX.CODE CRIM.PROC.ANN. art. 21.03, when a statutory term or element is defined by a statute, the charging instrument is not required to allege the definition of the term or element. *State v. Zuniga*, 512 S.W.3d 902, 907 (Tex.Crim.App. 2017).

Finally, "simply because an indictment fails to convey some requisite item of notice does not necessarily require reversal of a conviction." *Geter v. State*, 779 S.W.2d 403, 407 (Tex.Crim.App. 1989)(en banc). In circumstances in which the indictment contains a defect in form because, for example, it fails to allege sufficient facts, *and* the appellant preserved the error by raising a pretrial objection for lack of notice, *see Teal*, 230 S.W.3d at 182, we ask whether the substantial rights of the defendant were prejudiced by the defect. TEX.CODE CRIM.PROC.ANN. art. 21.19. To determine whether the substantial rights of the defendant were prejudiced by a defect in

form, we review the record and ask "whether, in the context of the case, failure to give that notice had an impact on the defendant's ability to prepare a defense and, if so, how great an impact it was." *Geter,* 779 S.W.2d at 407; *Adams*, 707 S.W.2d at 903.

### C. Capital Murder, The Law of Parties and Criminal Responsibility For Conduct of Another

In Texas, a person commits capital murder if he "commits murder as defined by Section 19.02(b)(1) and the person intentionally commits the murder in the course of committing or attempting to commit . . . robbery. . . ." TEX.PENAL CODE ANN. § 19.03(a)(2). A person commits murder under Section 19.02(b)(1) when the person "intentionally or knowingly causes the death of an individual." TEX.PENAL CODE ANN. § 19.02(b)(1).

A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both. TEX.PENAL CODE ANN. § 7.01(a). Each party to an offense may be charged with commission of the offense. *Id.* § 7.01(b). Each party to an offense "may be charged and convicted *without alleging* that he acted as a principal or accomplice." *Id.* at § 7.01(c)[Emphasis added].

A person may be held criminally responsible for an offense committed by the conduct of another if: (1) acting with the kind of culpability required for the offense, he causes or aids an innocent or nonresponsible person to engage in conduct prohibited by the definition of the offense; (2) acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense; (3) having a legal duty to prevent commission of the offense and acting with intent to promote or assist its commission, he fails to make a reasonable effort to prevent commission of the offense; or (4)  if, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the

10

conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy. TEX.PENAL CODE ANN. § 7.02(a)(1)-(3) and (b).

**D.      The Indictment**

Count I of Popp's indictment alleged in relevant part:

> Moses Popp . . . did then and there intentionally cause the death of an individual, namely, [T.V.], by shooting [him] with a firearm, and the defendant was then and there in the course of committing or attempting to commit the offense of robbery of [T.V.].

> And it is further presented in and to said Court that a deadly weapon, to-wit: a firearm, was used or exhibited during the commission of the aforesaid offense or during immediate flight following the commission of the aforesaid offense, and that the defendant used or exhibited said deadly weapon *or was a party* to the aforesaid offense and knew that a deadly weapon would be used or exhibited. [Emphasis added].

Thus, the indictment on its face accused Popp of committing the offense of capital murder both as a principal actor *or as a party* to the offense.

**E.      Procedural Background**

Several months before trial, on October 11, 2018[2] and again on February 5, 2019, Popp filed a motion to dismiss the indictment, asserting the indictment was defective because it failed to allege a theory of party culpability listed under Section 7.02. The live motion alleged in relevant part:

> [I]t appears that the State might intend to rely upon one or more of four other distinct theories of culpability to prove that Defendant was criminally responsible for the conduct of another under Penal Code section 7.02, each of which theories requires proof of acts or omissions and culpable mental states different and distinct

---

[2] The first motion to dismiss the indictment was withdrawn on November 14, 2018, but was refiled with no significant alterations.

11

from those required by the others, and none of which is alleged in Count I of the pending indictment.

A hearing on Popp's motion to dismiss was held on March 5, 2019. The prosecutor, relying in part on *Marable v. State*, 85 S.W.3d 287 (Tex.Crim.App. 2002), argued that well-established law does not require the indictment to allege *any* culpability theory under the law of parties, but nevertheless referenced two specific theories under Section 7.02(a)(2) and 7.02(b) that the prosecutor believed might be raised by the evidence and, if so, about which the State would ask the trial court to instruct the jury "when the time comes." In response, Popp's attorney conceded to the trial court that

> [T]he weight of authority at this point is that the State does not have to plead a Parties theory or a theory of culpability for the conduct of another in its charging instrument when it intends to rely upon that in trial. I just disagree with that.

The trial court denied the defendant's motion to dismiss in an oral ruling made from the bench at the end of the hearing.

When trial commenced on November 8, 2019, prior to jury selection, the prosecutor informed the trial court that Popp had turned down a plea offer. Concerned that Popp may not understand how the law of parties operated or that he could be held responsible for criminal conduct of another, the prosecutor read into the record the accomplice definitions contained within Section 7.02(a)(2) and 7.02(b). After reading these provisions, the prosecutor explained in detail how they might apply based on the facts known to the prosecutor at that time. In response to the prosecutor's remarks, defense counsel did not express surprise that would necessitate more time to prepare Popp's defense nor did he seek a continuance, but maintained only that he would object to any reference to the law of parties during voir dire and throughout trial because he believed "notice of those theories is required to be pled in the indictment . . . ." Defense counsel also

12

confirmed that Popp had previously been made aware of the law of parties and how it operated.

## F.    Analysis

Popp does not contend the indictment failed to charge him with a felony offense. And we find the indictment in fact charged Popp with the felony offense of capital murder. Consequently, the jurisdictional question of whether the face of the indictment is clear enough to give Popp adequate notice of the felony charge against him is not in issue. We find it was and that the district court's jurisdiction was properly invoked.

Popp's argument, as we interpret it, is in *addition* to notice of the charge against him and in the face of his motion to dismiss, he was also entitled to be apprised of the "precisely factual basis" on which the State intended to rely to prove the *alternate* allegation that he was criminally responsible *as a party* to the offense, and that in the absence of such facts in the indictment, he was allegedly unable to prepare a complete defense. We review his claim in this light.

### 1.    Popp's Indictment Was Not Defective.

As Popp acknowledges, it is well settled that an indictment need not allege the facts which make a defendant a party to the offense and criminally responsible for the conduct of another before the jury can be instructed it can convict on that basis. *See Pitts v. State*, 569 S.W.2d 898, 900 (Tex.Crim.App. 1978)("Sec. 7.01(c) now plainly requires that we hold a party to an offense may be charged with the offense without alleging the facts which make the defendant a party to the offense and criminal responsible for the conduct of another"). [3] The rationale justifying

---

[3] *See also*, *Tate v. State*, 811 S.W.2d 607, 607 n.3 (Tex.Crim.App. 1991)(noting with approval court of appeals' conclusion that "it is well settled that if the evidence supports a charge on the law of parties, the court may charge on the law of parties even though there is no such allegation in the indictment." [Internal quotations omitted]); *Marable v. State*, 85 S.W.3d 287, 287 & n.2 (Tex.Crim.App. 2002)("it is well-settled that the law of parties need not be pled in the indictment")(collecting cases).

13

omission of such facts from the indictment is that "sufficient notice to prepare a defense is given to a party to an offense by allegations of the underlying offense itself, and the facts which make a person criminally responsible for the conduct of another are *evidentiary* and need not be pled." *Swope v. State*, 805 S.W.2d 442, 444-45 (Tex.Crim.App. 1991)[Emphasis added].

Popp nevertheless argues that *Geter v. State*, 779 S.W.2d 403, 409 (Tex.Crim.App. 1989)(en banc), rather than *Pitts,* controls our analysis here. Popp contends in light of the party allegation contained in his indictment, and in the face of his motion to dismiss the indictment for lack of notice, he was entitled to (1) "formal pretrial notice" of the acts and omissions on which the State intended to rely at trial to prove his "vicarious culpability" under Section 7.02, which would have operated to (2) "bind" the State at trial. We are unpersuaded by Popp's arguments.

**The Indictment Was Sufficient to Notify Popp of the Acts and Omissions On Which the State Relied to Convict Him of Capital Murder.**

As an initial matter, we disagree with Popp's assumption that absent a specific party allegation in the indictment, an accused is denied notice of the acts and omissions that render his conduct violative of a criminal statute. Indeed, any acts and omissions that might render an accused culpable *as a party* are subsumed in the acts and omissions that form his alleged culpability as a *principle*. Thus, when the State provides notice to the defendant of the offense of which he is accused, the State is simultaneously providing notice of the acts and omissions that might render him culpable as a party to that offense. *See Marable*, 85 S.W.3d at 292 n.15 (Cochran, J. concurring)(*citing United States v. Neal*, 951 F.2d 630, 633 (5th Cir. 1992)(for proposition that "[a]iding and abetting is not a separate offense, but is an alternative charge in every indictment, whether explicit or implicit"); *Swope*, 805 S.W.2d at 445 (an accused who has "been fortuitously put on notice that his criminal responsibility is as a party . . . will be provided further notice of

14

manner and means through the evidence adduced [at trial], and may then demand that the trial court properly apply the law of parties to the facts thus presented. . . . In that fashion appellant has been apprised of everything due process and due course of law mandate.").

In addition, generally, in a case in which the State alleges the defendant is guilty as a principal, before any theory of party culpability is submitted to the jury at trial, the defendant must first *contest* his guilt as a principal by pointing to the criminal conduct of another. While the State *may* anticipate before trial the defendant will likely do so, as was the case here, the State cannot predict with any certainty *which* accomplice theory will apply until the accused actually puts on his case contesting his participation in the offense as a principal. *See eg. Jaubert v. State*, 74 S.W.3d 1, 4 (Tex.Crim.App. 2002)(In situations in which "the defendant, rather than the State, determines whether a contested issue will be raised, and his determination will not be made known until he presents his case . . . [i]t would be practically impossible for the State to give notice until that time.)."

Indeed, due to the impossibility of predicting what facts the defendant may introduce at trial, if the State was forced to allege specific accomplice culpability in advance of trial, it would simply allege all four theories available under Section 7.02 in disjunctive paragraphs and abandon the paragraphs unsupported by the evidence presented at trial, which would provide no more notice to an accused than that afforded to him by simply reading the statute. *See Thomas v. State*, 621 S.W.2d 158, 162-63 (Tex.Crim.App. 1980)(op. on reh'g)(observing that the reason for conjunctive and multi-count indictments is "to avoid an acquittal by any unforeseen lack of harmony between allegation and proofs . . ."); *see also* TEX.CODE CRIM.PROC.ANN. art. 21.24(b)("A count may contain as many separate paragraphs charging the same offense as necessary, but no paragraph

15

may charge more than one offense.").

Such a scenario is dictated by the circumstances in which law-of-party issues arise. Indeed, in his briefing, Popp's description of the defense's alleged uncertainty of which accomplice theory would come into play at his trial applies with more force to the State because the defendant under these circumstances typically has more access to the relevant information.[4] Therefore, the *only* pre-requisite to the submission of a charge on the law of parties is that the evidence presented at trial supports it. *Pitts*, 569 S.W.2d at 900 ("If the evidence supports a charge on the law of parties, as it does here, the court may charge on the law of parties even though there is no such allegation in the indictment."); *see also Adames*, 353 S.W.3d at 861 (affirming capital murder conviction despite omission of party culpability allegation in both the indictment and application paragraph in jury charge because evidence supported defendant's culpability as a party, and observing "both state and federal law specify that due process does not require a defendant's culpability as a party to the offense to be plead in the charging instrument").

**No Conflict in Authority**

Popp also argues that the holdings in *Geter* and *Pitts* are conflicting. We disagree. In *Geter*, the Court of Criminal Appeals held "in a theft prosecution where the State relies upon a defendant's act or omission to negate consent pursuant to § 31.01(4), the indictment must allege which of the statutory negatives vitiated consent, or the indictment will be subject to a timely motion to quash

---

[4] Popp writes in his Reply brief: "Had the evidence raised an issue that Popp somehow induced Soriano to shoot T.V. by convincing him that T.V. was about to shoot them, Soriano would arguably have been acting in what he reasonably thought to be self-defense, and therefore innocent of the killing . . . it is undisputable, under the State's reading of *Pitts* and its progeny, that the prosecution would have been entitled to a jury instruction on the innocent person theory of vicarious culpability, even if not alleged in the indictment, had there been evidence adduced at trial raising the issue." This passage illustrates why party culpability is *evidentiary*. If true, only Popp and Soriano would know about such facts. If such facts had been raised for the first time at trial by either Popp or Soriano (if he had been called as a witness), the law of parties would have prevented Popp from evading his criminal responsibility by attempting to ambush the State with this information at trial.

for lack of notice." *Geter*, 779 S.W.2d at 407. In that case, the Court grappled with the defendant's right to notice of facts on which the State would rely to prove an "element" of the theft offense with which the defendant was accused in the first instance. The Court then expressly limited its holding to prevent its general application to *other* statutes or to *evidentiary* matters. *See Geter*, 779 S.W.2d at 407 ("Our holding today is not intended to affect the notice requirements of other statutes or to stand as an endorsement of needless and potentially endless pleading of purely evidentiary matters."). *Pitts* on the other hand relies on a statute, Section 7.01(c),[5] which expressly permits the omission of facts alleging party culpability. Moreover, party culpability is not an "element" of the offense of capital murder. Rather, as discussed above, Section 7.02 definitions are applicable only *if* the defendant contests his culpability as a principal at trial, and the precise theory of party culpability that will be submitted to the jury is the one that is raised by the evidence. As there is no similar statutory provision in the theft statute, or in any other statute in which *Geter* is applied, and the Court in *Geter* expressly limited its holding to the statute at issue there, we see no conflict in the holdings between *Pitts* and *Geter*.

Accordingly, because the indictment in this case was sufficient to apprise Popp he stood accused of committing capital murder, it was sufficient to notify him of the facts necessary to prepare his defense. *Swop*e, 805 S.W.2d at 444-45. To the extent the indictment explicitly notified Popp his criminal responsibility was *alternatively as a party*, the indictment contained more information than the law requires, and therefore was not deficient. *Swope*, 804 S.W.2d at 445 ("If [an accused] is not entitled to any notice as to his criminal responsibility [under § 7.02] in the first

---

[5] At oral argument, Popp's counsel confirmed he is not challenging the constitutionality of Texas Penal Code section 7.01(c), which expressly dispenses with the requirement that an indictment allege whether an accused acted as a principal or accomplice. Accordingly, we do not reach that issue here.

place [] it surely follows that he is not entitled to more notice than the pleader gratuitously gives.").

For these reasons, the trial court did not err in denying Popp's motion to dismiss his indictment or by submitting the issue of party culpability to the jury even though the precise theories of same were omitted from the indictment. But, even if Popp could somehow show the indictment was deficient, as demonstrated below, he had sufficient notice to prepare his defense and therefore his substantial rights were not prejudiced by the alleged defect.

2.      **The Record Demonstrates Popp Was Provided Adequate Notice To Prepare His Defense.**

Popp contends the absence of facts in the indictment indicating which theory of party of culpability would apply left him "uncertain how to prepare for trial." For several reasons, the record does not support Popp's contention. First, the indictment clearly alerted the defense that Popp was accused of committing the offense both as a principal *or* as a party and that the State would therefor seek a law-of-party instruction *if* it was supported by the evidence at trial. Indeed, Popp acknowledges in his briefing he was prompted to file the motion to dismiss the indictment in the first place because "defense counsel suspected the prosecution would rely on vicarious culpability, and took that possibility into account during his pretrial preparation."

Second, at the hearing on the motion to dismiss the indictment, the prosecutor expressly identified Section 7.02(a)(2) and (b) of the Texas Penal Code as the party culpability theories he believed might be raised at trial given the facts known to the State at that time and which might be requested in the trial court's charge "when the time comes." And at trial, before the jury was selected, the State announced again it believed these same sections would likely be raised by the evidence. Third, when questioning Popp outside the presence of the jury about a possible plea, defense counsel confirmed on the record that Popp was aware of the applicability of the law of

18

parties and how it might apply. Fourth, the court's charge instructed the jury on only those two theories of party culpability referenced by the prosecutor in the hearing on Popp's motion to dismiss. The record therefore makes plain that Popp was on notice at least since March 5 that the State believed these particular provisions would likely be raised by the evidence.

In addition, when the State announced prior to voir dire that *even if* Popp believed he was not guilty because he did not pull the trigger, he could still be found guilty under Section 7.02(a)(2) and (b), Popp did not seek a continuance which if granted would have afforded him more time to prepare his defense. Such a motion, even if denied, might have supported his claim that he was surprised or unprepared to present a defense. Instead of claiming surprise that necessitated a continuance, however, Popp merely reasserted his contention that these provisions were required to be formally alleged in the indictment. Finally, the record does not suggest an alternative defense available to Popp if the specific theories of culpability had been alleged in the indictment, nor does Popp explain how his defense would have changed if the precise accomplice liability theories raised by the evidence had been included in the indictment. Thus, based on our review of the record, we hold that even if Popp could somehow show the indictment was defective for failure to allege the specific theories of culpability on which the jury was charged, his substantial rights were not prejudiced.

For these reasons, we overrule Issues One and Two.

## II.     Jury Charge Error

In Issue Three, Popp argues the evidence was insufficient to warrant submission in the jury charge of his party culpability.[6]

---

[6] Popp does not challenge the sufficiency of the evidence warranting submission in the jury charge of the theory he acted as a *principal*. Nor does he allege the evidence was insufficient to support his *conviction*.

### A. Standard of Review

"In contrast to the indictment, which serves a notice function to the defendant, the function of the jury charge is to instruct the jury on the law applicable to the case." *Dinkins v. State*, 894 S.W.2d 330, 339 (Tex.Crim.App. 1995). Because the charge is the instrument by which the jury convicts, the charge must contain an accurate statement of the law and must set out all the essential elements of the offense. *Id.*

In addition, the trial court is required to "charge upon issues arising from the facts," TEX.CODE CRIM.PROC.ANN. art. 36.14, and the "jury is the exclusive judge of the facts." TEX.CODE CRIM.PROC.ANN. art. 36.13; *see also Abdnor v. State*, 871 S.W.2d 726, 731 (Tex.Crim.App. 1994)("[t]he law must come from the court, the facts must be decided by the jury, and the charge, to instruct the jury properly, must apply the law to the facts raised by the evidence.")[Internal quotations, emphasis, and citations omitted]. When determining whether an issue was raised by the evidence and was therefore required to be included in the charge, it is not necessary to conclude the evidence was sufficient to *convict,* we need only determine whether the evidence raised a fact issue for the jury to resolve. *See Walker v. State*, 823 S.W.2d 302, 305, 308 (Tex.Crim.App. 1989)(sustaining trial court's submission of charge on law of parties over appellant's objection because "the circumstantial evidence raise[d] the fact issue of whether [appellant] was guilty as a party to the offense," but reversing on ground that evidence did not support conviction because application paragraph failed to authorize jury to convict as party).

Finally, when reviewing allegations of charge error, we must first determine whether error actually exists in the charge. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex.Crim.App. 2005)(en banc). If error exists, we must then determine whether it caused sufficient harm to require reversal. *Id.*

When there was a timely objection to an improper jury charge, as is the case here, the error requires reversal unless it is harmless. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App. 1984)(en banc).

### B.     The Jury Charge

The trial court's charge instructed the jury in relevant part:

Our law provides that a person commits the offense of Capital Murder if the person intentionally commits murder in the course of committing or attempting to commit robbery

.         .         .

Law of Parties

Our law provides that a person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both.

A person is criminally responsible for an offense committed by the conduct of another if:

(A) acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense; or

(B) if, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy.

A "**conspiracy**" is committed if, with intent to commit a felony offense, a person agrees with one or more persons to commit a felony offense and one or more of them performs an overt act in pursuance of said agreement.

An agreement constituting a conspiracy may be inferred from the acts of the parties.

You are instructed that murder and robbery are felony offenses in the State of Texas.

21

Mere presence or knowledge alone of an offense does not make one a party to an offense.

After accurately setting forth the law, the court's charge then applied the law to the facts and enabled the jury to convict Popp under one of three alternate means by which he could have committed the offense: (1) as the principal; (2) as a party who solicited, encouraged, directed, aided, or attempted to aid the principal (Richard Soriano); or (3) as a party who conspired with the principal (Richard Sorriano) to commit robbery. Specifically, the application paragraphs provided:

> Now if you find from the evidence beyond a reasonable doubt that on or about the 12th day of March, 2018, in El Paso County, Texas, the Defendant Moses Popp, did then and there intentionally cause the death of an individual, namely [T.V.], by shooting [T.V.] with a firearm while in the course of committing or attempting to commit robbery of [T.V.], and did then and there use or exhibit a deadly weapon, to wit: a firearm, during the commission of the offense or during immediate flight from said offense,
>
> OR
>
> If you find from the evidence beyond a reasonable doubt that on or about the 12th day of March, 2018, in El Paso County, Texas, the Defendant, Moses Popp, with the intent to promote or assist the offense of robbery, did then and there solicit, encourage, direct, aid, or attempt to aid Richard Soriano to intentionally cause the death of an individual, namely [T.V.], by shooting [T.V.] with a firearm while in the course of committing or attempting to commit robbery, and did then and there use or exhibit a deadly weapon, to wit: a firearm, during the commission of the offense or during immediate flight from said offense,
>
> OR
>
> If you find from the evidence beyond a reasonable doubt that on or about the 12th day of March, 2018, in El Paso County, Texas, the Defendant, Moses Popp, did then and there attempt to carry out a conspiracy to commit robbery with Richard Soriano, and in furtherance of their unlawful purpose, one of them intentionally caused the death of an individual, namely [T.V.], by shooting [T.V.] with a firearm while in the course of committing or attempting to commit robbery, and did then and there use or exhibit a deadly weapon, to wit: a firearm, during the commission of the offense or during immediate flight from said offense, and the said offense was one that should have been anticipated by the Defendant, Moses Popp, as a

22

result of carrying out the conspiracy,

THEN

You will find the Defendant, Moses Popp, guilty of Capital Murder as charged in the Indictment.

At trial, Popp objected to the submission of Popp's culpability as a party under Section 7.02(a)(2) and (b) in both the abstract and application paragraphs in the court's charge in part because it was allegedly not raised by the evidence. Popp's objection was overruled.

C.      Analysis

On appeal Popp repeats his contention that no evidence existed raising a fact issue regarding whether (1) Popp entered into a conspiracy with Soriano to rob the deceased, or (2) Popp solicited, encouraged, directed, aided, or attempted to aid Sorinao to cause T.V.'s death, and therefore these theories of party culpability under Section 7.02(a)(2) and 7.02(b) allegedly should not have been submitted to the jury. We disagree.

"In determining whether the accused participated *as a party*, the court may look to events occurring before, during and after the commission of the offense, and may rely on actions of the defendant which show an understanding and common design to do the prohibited act." *Ransom v. State*, 920 S.W.2d 288, 302 (Tex.Crim.App. 1994)(op. on reh'g)[Internal quotations omitted]. "Further, circumstantial evidence may be used to prove party status." *Id*.

Here, the jury heard evidence establishing that on the day of the shooting, Popp lured a drug dealer via Facebook Messenger, to a certain location under the guise he wanted to purchase marijuana. Popp drove to the location in a vehicle in which Soriano rode as a passenger. Popp exited the car, robbed the drug dealer at gunpoint using a Remington rifle and sped away. When immediately confronted by Villegas via Facebook Messenger, Popp taunted Villegas with the

23

comment, "What u gone [sic] do?"

Less than two hours later, Popp lured the deceased via Facebook Messenger to a second location under the guise he wanted to purchase $100 worth of cocaine. During the transaction, Popp and Soriano used the same vehicle they used in the previous robbery and a bullet from the same Remington rifle Popp used in the previous robbery killed T.V. Neither Popp nor Soriano exited the vehicle after the victim was shot and they sped away together without giving aid to the victim or calling an ambulance. The deceased had a fake $100 in his possession and no drugs were found at the crime scene. Given the short time period between the two drug transactions, the jury could have reasonably inferred from this evidence that Popp and Soriano: (1) were each aware the rifle was present in the car at the time they met with the deceased; (2) they were each aware of its intended use; (3) they each agreed that one of them would point the rifle at the deceased, one of them would grab the cocaine, and one of them would speed away to avoid capture or retribution; (4) in order to coordinate these acts, a conversation agreeing to their respective roles occurred; (5) and by leaving the victim to die after he was shot without seeking medical aid, the non-shooter assisted in the murder.

The evidence after the shooting further established Popp admitted he and Soriano had "fucked up" indicating he felt responsible for the shooting. Popp, not Soriano, remained in possession of the gun immediately after the shooting, from which the jury could have reasonably inferred it was Popp's gun. And it was Popp, not Soriano, who took action to dispose of the murder weapon, suggesting consciousness of guilt.

Finally, at trial Popp admitted to being present at the shooting but claimed he was unaware that Soriano would pull the trigger. In light of Popp's defense contesting his culpability as a

24

principal actor in the offense, we find the evidence of Popp's actions and omissions before, during, and after the shooting sufficient to raise a fact issue as to whether Popp participated *as a party* to the alleged offense by soliciting, directing, encouraging, aiding, or attempting to aid Soriano in causing T.V.'s death, or by entering into a conspiracy with Soriano to rob the deceased, during which T.V. was killed. Accordingly, Popp's culpability *as a party* was properly submitted to the jury in the court's charge.

For these reasons we overrule Issue Three.

## III.    Extraneous offense evidence--Rule 404(b)

In Issue Four, Popp contends the testimony by Guerrero and Villegas establishing Popp robbed Guerrero at gunpoint was evidence of an extraneous offense requiring a Rule 404(b)[7] limiting instruction at the time the testimony was admitted, which the trial court refused to give. *See Rankin v. State*, 974 S.W.2d 707, 712-13 (Tex.Crim.App. 1996)(finding error when Rule 404(b) limiting instruction was not given until it was included in the jury charge). In response, the State argues the complained-of testimony was not Rule 404(b) evidence, but rather same-transaction contextual evidence, which the jury was entitled to consider without limitation. *Westbrook v. State*, 29 S.W.3d 103, 114-15 (Tex.Crim.App. 2000); *Devoe v. State*, 354 S.W.3d 457, 471 (Tex.Crim.App. 2011).

### A.    Standard of Review

We review the trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Devoe,* 354 S.W.3d at 469. The trial court does not abuse its discretion unless its determination lies outside the zone of reasonable disagreement. *Id.* If the trial court's

---

[7] *See* TEX.R.EVID. 404(b)(1)("Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.")

25

"evidentiary ruling is correct on any theory of law applicable to that ruling, it will not be disturbed, even if the trial judge gave the wrong reason for his correct ruling." *Id.*

## B.      Same Transaction Contextual Evidence

When a separate offense is "used to prove a main fact in the case, an instruction limiting the jury's consideration of this evidence is generally not required." *Westbrook*, 29 S.W.3d at 115. Indeed, "[c]ircumstances of the offense which tend to prove the allegations of the indictment are not *extraneous* offenses." *Camacho v. State*, 864 S.W.2d 524, 532 (Tex.Crim.App. 1993), *cert. denied*, 510 U.S. 1215 (1994)(*citing Ramirez v. State*, 815 S.W.2d 636, 643 (Tex.Crim.App. 1991)). [Emphasis added]. In addition, we have held that a separate crime "closely related in time" that "imparts to the trier of fact information essential to understanding the context and circumstances" of the alleged offense is admissible as same transaction contextual evidence, which can be considered without limitation. *Gillum v. State*, 888 S.W.2d 281, 285-86 (Tex.App.—El Paso 1994, pet. ref'd)(*relying* on *Nelson v. State*, 864 S.W.2d 496, 498 (Tex.Crim.App. 1993) and *Camacho*, 864 S.W.2d at 532). The indictment in this case alleged Popp committed murder in the course of committing or attempting to commit a robbery. Consequently, any evidence that tended to prove Popp's intent to rob the deceased was relevant and admissible proof of the alleged offense.

We believe the short timeframe between the robbery Popp committed against Guerrero and the encounter with the deceased, as well as the similarities leading to both meetings, tended to prove that Popp and Soriano together were engaged in a crime spree that involved robbing drug dealers at gunpoint, and the deceased was one of those drug dealers. More specifically, the previous robbery established Popp was aware of both the presence of the gun and its intended

26

use. As such, the complained-of evidence was not "extraneous" but in fact *intrinsic* evidence relevant to prove Popp's intent to rob the deceased and that T.V.'s death was caused in the course of a robbery or attempted robbery. This evidence therefore was same-transaction contextual evidence and admissible without limitation, rendering a limiting instruction inappropriate.

### C. Extraneous Offense Instruction In Jury Charge

In Issue Five, Popp contends the Rule 404(b) instruction that was ultimately included in the jury charge was insufficient because it came to late and it was not limiting. At Popp's request, the trial court submitted a Rule 404(b) limiting instruction in the jury charge, which read as follows:

> The Defendant is entitled to be tried in this case only for the offense with which he is charged in the indictment. The State has introduced evidence of extraneous crimes or bad acts other than the one charged in the indictment in this case. This evidence was admitted only for the purpose of assisting you, if it does, for the purpose of showing the defendant's motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, if any. You cannot consider the testimony unless you find and believe beyond a reasonable doubt that the defendant committed these acts, if any, were committed.

Popp nevertheless objected to the instruction as worded, insisting it was not in fact a "limitation" because it was "boilerplate" language and contained an exhaustive list of the possible uses contained in Rule 404(b). Instead, Popp requested that the State be required to articulate the precise purpose for which the evidence was admitted and to limit the instruction to that purpose. *See Daggett v. State*, 187 S.W.3d 444, 452 (Tex.Crim.App. 2005)(explaining that when 404(b) evidence is admitted for particular purpose, "upon request, a judge must provide a limiting instruction informing the jury that they may use the evidence" for that particular purpose.).

For the reasons stated above, we find the Rule 404(b) instruction submitted in the jury charge was unnecessary, but nevertheless harmless because any limitation to the consideration of

27

this evidence was error against the State and Popp is therefore in no position to complain. *Ruiz v. State*, 523 S.W.2d 691, 694 (Tex.Crim.App. 1975)(*superseded by statute* on other ground as recognized in *Harrell v. State*, 659 S.W.2d 825, 826 (Tex.Crim.App. 1983)).

Issues Four and Five are overruled.

## IV.    Excluded Evidence

Next, Popp contends the trial court erred in excluding evidence he attempted to introduce during his case-in-chief.

### A.    Standard of Review

Once again, we review a trial court's ruling in this regard using an abuse of discretion standard. *Devoe*, 354 S.W.3d at 469. The trial court does not abuse its discretion unless its determination lies outside the zone of reasonable disagreement. *Id*. If the trial court's "evidentiary ruling is correct on any theory of law applicable to that ruling, it will not be disturbed, even if the trial judge gave the wrong reason for his correct ruling." *Id.* Moreover, Rule 44.2(b) of the Texas Rules of Appellate Procedure requires that we disregard all non-constitutional "error, defect, irregularity, or variance that does not affect substantial rights" of the defendant. TEX.R.APP.P. 44.2(b). "The erroneous exclusion of evidence offered under the rules of evidence generally constitutes non-constitutional error and is reviewed under Rule 44.2(b)," *Walters v. State*, 247 S.W.3d 204, 219 (Tex.Crim.App. 2007), unless the excluded evidence "forms such a vital portion of the case that exclusion effectively precludes the defendant from presenting a defense." *Potier v. State*, 68 S.W.3d 657, 665 (Tex.Crim.App. 2002).

### B.    Soriano's Guilty Pleas, Judicial Confession, and Sentence

In Issue Six, Popp contends the trial court erred when it excluded certified copies of

28

Soriano's: (1) indictment; (2) plea papers indicating he entered guilty pleas to both the lesser-included-offense of murder and aggravated robbery (of Guerrero) and signed a (form) judicial confession; and (3) judgment demonstrating he received a fifty-five-year concurrent prison sentence. Popp contends this evidence was relevant to his defense, which allegedly painted Soriano as the principal actor in the offense and contradicted the allegation in the indictment that Popp was the principal. Popp also claims it was relevant to the State's theory that Popp was a party to the offense.

At trial, the State told the trial court it had no intention of calling Soriano as a witness, which rendered these exhibits inadmissible hearsay and were irrelevant to Popp's guilt or innocence. An exchange between defense counsel and the trial court ensued:

> THE COURT: So what I'm failing to see though . . . is how -- I mean, we had testimony regarding two individuals being involved possibly in the offense. How is the disposition of Mr. Soriano's case relevant here?

> [Defense Counsel]: We are showing that -- how is it relevant? It's being offered to prove that Richard Soriano shot [T.V.]. There is a judgment of conviction against him for doing exactly that. The indictment charges, in exactly the same language as Mr. Popp is charged, the offense for which Mr. Popp is on trial. Mr. Soriano has been convicted of that very offense. I fail to see how showing that somebody else committed the offense for which Mr. Popp is being prosecuted is irrelevant.

> THE COURT: Okay. So I'm going to sustain the State's objection. Defense proposed Exhibits 2, 3 and 4 are not admitted if they have been offered.

On appeal, the State cites numerous cases generally holding evidence of a co-defendant's conviction or acquittal is not relevant to the defendant's guilt, whether it is offered by the defense or the State. *See Miller v. State*, 741 S.W.2d 382, 389 (Tex.Crim.App. 1987), *cert. denied*, 486 U.S. 1061 (1988)("Generally speaking, for obvious reasons, it is not permissible to show that another non-testifying person, who has been jointly or separately indicted for the same offense as

29

the accused, has been either convicted or acquitted."); *Rodriguez v. State*, 552 S.W.2d 451, 456 (Tex.Crim.App. 1977)(where co-defendants did not testify, appellant's evidence demonstrating disposition of charges against co-defendants was inadmissible); *Bridge v. Lynaugh*, 838 F.2d 770, 773 (5th Cir. 1988)("A co-defendant's conviction and sentence for an offense arising out of the same course of events is irrelevant to the question of the defendant's guilt and thus not admissible."); *Morales v. State*, 11 S.W.3d 460, 465-66 (Tex.App.—El Paso 2000, pet. ref'd)("It is generally improper for the State to elicit evidence that a co-defendant has been convicted or acquitted.").

Popp argues he did not offer this evidence for the purposes that were at issue in these cases, but rather to support his defense that he did not pull the trigger himself. But, the documents do not establish that fact. Rather, they only establish that Soriano entered guilty pleas to the charged offenses, which could have been entered in his capacity as the principal or a party. Moreover, he fails to point to a single case supporting his argument that a co-defendant's guilty plea to the charged offense is admissible to show the defendant is not guilty of the charged offense. Accordingly, we hold evidence of Soriano's indictment, guilty pleas, and judgment were irrelevant to Popp's guilt and therefor inadmissible.

In addition, even if Popp could somehow show this evidence had some relevance to Popp's guilt, for several reasons, we agree with the State this evidence was also correctly excluded under Rule 403. [8] "'Rule 403 recognizes that relevance alone does not ensure admissibility.'" *Gigliobianco v. State*, 210 S.W.3d 637, 640 (Tex.Crim.App. 2006)(quoting J. McLaughlin, et al.,

---

[8] Rule 403 provides: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." TEX.R.EVID. 403.

*Weinstein's Federal Evidence* § 403.02[1][a] at 403-6 (2006 rev.)). "'Relevant evidence may be excluded if its probative value is not worth the problems that its admission may cause.'" *Id.* Here, the plea papers indicated Soriano pleaded guilty to *murder*, which is a lesser-included offense of the capital murder offense for which Popp was on trial. While the State has discretion to permit a co-defendant to enter such a plea, that discretion is influenced by considerations that exist outside the four corners of the plea document and those considerations are not relevant if the co-defendant does not testify. *Miller*, 741 S.W.2d at 389-90. In addition, the plea papers included Soriano's guilty plea to the aggravated assault charge committed against Guerrero, for which Popp was not currently on trial. And to the extent that Popp wanted to use the plea papers to establish Soriano was the principal actor in both offenses, legally, Soriano could have pleaded guilty in his capacity *as a party* to one or both of these offenses, and whether he did so would not have been readily apparent to the jury from the documents themselves.

Given these factors weighing against admission, the trial court could have reasonably concluded that the probative value of this evidence was slight in that it did not conclusively establish Soriano was guilty as a principal, that there was substantial danger of unfair prejudice to the State, its admission would cause confusion of the issues regarding Popp's criminal culpability to either offense and/or mislead the jury into believing Popp was not guilty of capital murder because Soriano was convicted of the lesser-included-offense of murder.

Because we find the evidence was correctly excluded, we hold the trial court did not err. We overrule Issue Six.

### C. Text Exchanges Between Decedent and His Girlfriend.

In Issue Seven, Popp contends the trial court erred when it excluded two photographs taken

by EPPD Officer Mark of the deceased's cell phone depicting text exchanges between the deceased and his girlfriend, Princess Perez ("Princess"). Popp primarily argues the evidence was admissible under Rule 107[9] to show the deceased was allegedly not in possession of cocaine when he was killed, and it would thereby permit the jury "fully to understand other circumstances of the [drug] transaction that were clearly relevant to rebut the State's allegation of robbery."

### 1. The Text Message Evidence Offered at Trial

The photographs offered by the Defense depicted the following texts between the deceased and his girlfriend in relevant part:

**Exhibit D-5:**

[Princess:] Be careful with that nigga!
　　　[TV:]　Ight
[Princess:] Why u meeting him?
　　　[TV:]　He want some coke
[Princess:] You sell

**Exhibit D-6:**

　　　[TV:]　Nah
[Princess:] Well?
　　　[TV:]　I'm take him to the spot my nigga got it
[Princess:] Babe
　　　[TV:]　Yes?
[Princess:] U know that nigga?
　　　[TV:]　Yeah not frfr [sic] tho

At trial, defense counsel argued these texts were admissible under Rules 106 and 107 because the State had introduced into evidence contemporaneous texts between the deceased and

---

[9] While Popp makes a single reference to Rule 106 in his briefing, he cites no cases interpreting it, nor does he make any separate argument related thereto. Accordingly, we find Popp waived any error related to whether the texts were admissible under Rule 106. *See* TEX.R.APP.P. 38.1(i)(requiring "appropriate citations to authorities and to the record"); *Ladd v. State*, 3 S.W.3d 547, 575 (Tex.Crim.App. 1999)("requiring appellants, even capital appellants, to abide by [] published briefing rules and to make reasonable arguments in their own behalf does not offend traditional notions of fair play and substantial justice").

Popp concerning the same drug transaction. The State objected to the admission of the proffered texts on the ground they were hearsay. The State also informed the trial court that Popp had chosen only two photographs among forty photographs of texts the State had turned over to the defense, and that under the rule of optional completeness, it was "not fair" to exclude other texts that incriminated Popp during the same timeframe.

After the State lodged its objections, the following exchange ensued between defense counsel and the trial court:

THE COURT: So hold on a second. So are you telling me there's about 40 different screenshots of the conversation between Princess and the victim?

[Defense Counsel]: I don't know if there's 40, but there's more than two. But look, I'm not claiming that the process is --

THE COURT: Hold on a second. My next question is, is Princess here?

[Defense Counsel]: No. Princess is under subpoena.

.        .        .

THE COURT: So in the way you have made your request with two out of several screenshots of a conversation that may or may not come in based on the argument that you're making as you presented it, and without that witness or effort on your part to get her here since you found out that she's not here, I'm going to deny your request at this time.

[Defense Counsel]: Request for an attachment for her?

THE COURT: No, with respect to those two items. So right now they're not coming in.

[Defense Counsel]: We were not going to call her. We don't believe that the admissibility of these depends upon her testimony. The rest of this conversation was authenticated through a witness, the first witness in the case, Officer Mark, was it? And he --

[Prosecutor]: Where they came from --

33

THE COURT: Based on what you've presented, which is two screenshots --

[Defense Counsel]: Yes.

THE COURT: Okay. Your request is denied.

Defense counsel did not again attempt to introduce the texts into evidence. Instead, defense counsel eventually elicited the following testimony directly from Princess:

[Defense Counsel]: Did you come to learn -- did you come to learn that evening that [T.V.] was going to become involved in a drug transaction?

A. Yes.

Q. Okay. And did that concern you?

A. Yes.

Q. Okay. And why did it concern you?

A. Because I just been hearing crazy stuff.

Q. Okay. You weren't aware that he -- as you testified before, you weren't aware that he was involved in drug transactions?

A. No.

Q. And did he admit to you that he was in possession of cocaine?

[Prosecutor]: Objection, hearsay.

THE COURT: Sustained.

[Defense Counsel]: Okay.

[Defense Counsel]: I think I'm almost done. Let me just emphasize again, did you ever know [T.V.] during the years you knew him, to engage in a drug transaction, a drug sale?

A. No.

Q. Okay.

34

[Defense Counsel]: Pass the witness.

During closing, defense counsel argued to the jury in relevant part: "Nobody got out there to try to find the cocaine and no cocaine was found on [T.V.]'s body. And the reason is because [T.V.] didn't have any cocaine. [T.V.] is not a drug dealer as Princess Perez, his girlfriend told you, in the three years she knew him, he never dealt drugs."

### 2. The Rule of Optional Completeness

Texas Rule of Evidence 107, entitled "Rule of Optional Completeness" provides:

> If a party introduces part of an act, declaration, conversation, writing, or recorded statement, an adverse party may inquire into any other part on the same subject. An adverse party may also introduce any other act, declaration, conversation, writing, or recorded statement that is necessary to explain or allow the trier of fact to fully understand the part offered by the opponent. 'Writing or recorded statement' includes a deposition.

TEX.R.EVID. 107. Rule 107 is an exception to the hearsay rule, *Walters*, 247 S.W.3d at 217, and "is designed to reduce the possibility of the jury receiving a false impression from hearing only a part of some act, conversation, or writing." *Pena v. State*, 353 S.W.3d 797, 814 (Tex.Crim.App. 2011). Additionally, the rule of optional completeness requires the omitted portions be "on the same subject" and "necessary" to make the earlier admitted evidence fully understandable. *Sauceda v. State*, 129 S.W.3d 116, 123 (Tex.Crim.App. 2004). However, the rule is "limited by Rule 403, which permits a trial judge to exclude otherwise relevant evidence if its unfair prejudicial effect or its likelihood of confusing the issues substantially outweighs its probative value." *Walters*, 247 S.W.3d at 218.

### 3. Analysis

On appeal, the State contends the proffered texts were inadmissible under Rule 107 because they originated "from an entirely different conversation" to which Popp was not privy and that the

35

text thread introduced by the State in which Popp was involved demonstrated that Popp believed T.V. *was* in possession of the cocaine. According to the State, these facts established the proffered texts were not necessary to fully understand the conversation between T.V. and Popp. Popp, on the other hand, argues the texts sent by T.V. to Princess were "certainly relevant" to whether "Popp actually stole cocaine from T.V.," even though, as Popp acknowledges, "a completed theft was not necessary to a finding of guilt[.]"

As a threshold matter, we find the trial court impliedly treated each text thread at issue as a "conversation."[10] We also find the proffered texts sent by T.V. to Princess suggesting he was *not* in possession of cocaine conflicted with the texts T.V. contemporaneously sent to Popp suggesting he *was* in possession of cocaine and that both text threads were about the same drug transaction. In light of these findings, we consider whether the proffered texts were admissible under one of two avenues available under Rule 107 by asking: (1) whether the proffered texts sent contemporaneously by T.V. to Princess constitute "part" of the "conversation" introduced by the State; and (2) whether the proffered texts sent contemporaneously by T.V. to Princess constitute "another" "conversation" that is "necessary to explain or allow the trier of fact to fully understand" the "conversation" offered by the State. Under the second avenue, the rule does not require the proffered conversation be about the same subject matter discussed in the conversation previously introduced, but here, it just so happens they were.

We believe the proffered texts fall outside both avenues under the rule, and therefore constitute inadmissible hearsay. First, the texts sent by T.V. to Princess were not part of the text

---

[10] The Court of Criminal Appeals has encountered this issue, and while that case cannot be cited for precedential value or authority, we do find its reasoning persuasive. TEX.R.APP.P. 77.2; *see, Ukwuachu v. State*, No. PD-0366-17, 2018 WL 2711167 (Tex.Crim.App. June 6, 2018)(not designated for publication)(treating text messages as conversations).

thread T.V. sent to Popp and, consequently, the proffered texts were not "part" of the same "conversation" introduced by the State. Second, while the proffered texts concern "another" "conversation," about the same subject, this fact does not automatically render the proffered texts "necessary" to "explain or allow the jury to understand" the texts that were introduced by the State, and we find that they were not.

The latter conclusion is based on our determination that the text thread from T.V. to Popp left the impression with the jury that *Popp believed* T.V. had cocaine in this possession to sell, and that Popp believed he was meeting with T.V. to purchase and obtain the cocaine. Since it was undisputed Popp was not privy to the text conversation between T.V. and Princess, and there was no other evidence establishing Popp had reason to doubt T.V. was in possession of cocaine, we conclude the trial court did not abuse its discretion by determining the proffered texts did not operate to cure a *false* impression left with the jury regarding *Popp's belief* that T.V. had cocaine in his possession.

Moreover, while we agree with Appellant that if introduced into evidence, the proffered texts would have created a fact issue as to whether T.V. actually possessed the cocaine at the time he was killed, we conclude it was not necessary for the jury to resolve it because the State was not required to prove Popp actually stole the cocaine before the jury could find T.V. was murdered in the course of robbery or attempted robbery. *See Young v. State,* 283 S.W.3d 854, 862 (Tex.Crim.App. 2009)(in capital murder case "[t]he State did not bear the burden of proving that the appellant completed the theft of the victim in order to establish the underlying offense of robbery or attempted robbery"). The State was only required to prove Popp had formed *an intent to rob* T.V. before, or at the moment, T.V. was shot. *Id*.; *see also White v. State*, 779 S.W.2d 809,

815 (Tex.Crim.App. 1989)("the point at which appellant formulated his intent to take victim's property is critical to differentiating, in the abstract, between his commission of capital murder in the course of robbery and his commission of a first degree murder, followed by theft . . ."). And the "requisite intent to rob may be inferred from circumstantial evidence, particularly the appellant's assaultive conduct." *Young,* 283 S.W.3d at 862. Because the conversation between T.V. and Popp established that *Popp believed* T.V. was in possession of cocaine before he met with T.V., the proffered texts by T.V. to Princess suggesting T.V. was not actually in possession of cocaine would not have been necessary to understand T.V.'s texts to Popp.

But, even if Popp could somehow show the proffered texts were admissible under Rule 107, we believe Rule 403 would have also warranted their exclusion. The evidence suggested T.V. had motive to be dishonest about possessing cocaine when discussing the drug transaction with Princess, who believed he was not a drug dealer. As T.V. was unavailable to testify, the State would have been unable to question him about the conflict in his texts. Consequently, to the extent this evidence was admissible under an exception to the hearsay rule, we hold the probative value of this evidence, if any, was substantially outweighed by a danger of unfair prejudice to the State and, for the reasons previously discussed, was likely to confuse or mislead the jury into believing the State was required to prove the theft was completed before they could convict Popp of capital murder. Accordingly, we hold the trial court did not abuse its discretion when it excluded this evidence.

Finally, even if Popp could somehow show the trial court erred, we find the exclusion of this evidence did not violate his substantive rights nor did the evidence form such a vital portion of the case that its exclusion effectively precluded Popp from presenting his defense as

demonstrated above.

We overrule Issue Seven.

## CONCLUSION

Having overruled all seven of Popp's issues on appeal, we affirm the trial court's judgment.

September 9, 2021

YVONNE T. RODRIGUEZ, Chief Justice

Before Rodriguez, C.J., Palafox, and Alley, JJ.

(Publish)